JACQUELINE E. WELFORD *vs.* NANCY M. NOBREGA
& others[1]
(and a companion case[2]).

Nos. 89-P-605 & 90-P-430.

Middlesex. October 10, 1990. - February 5, 1991.

Present: SMITH, KAPLAN, & GILLERMAN, JJ.

Further appellate review granted, 410 Mass. 1102 (1991).

*State Lottery Commission. Lottery. Practice, Civil*, Summary judgment. *Fraudulent Conveyance. Administrative Law*, Agency's interpretation of statute. *Divorce and Separation*, Modification of judgment. *Words*, "Creditor."

In an action seeking declaratory relief, the judge's finding on motions for summary judgment, that two parties to the action had acted in bad faith was not supported by the record; rather, the uncontradicted affidavits of those parties provided no indication of fraud, and summary judgment in their favor should have been granted on the undisputed facts. [99-100]

In a civil action, no special circumstances unrelated to the marriage entitled a former wife to assert status as a creditor under G. L. c. 109A, the Uniform Fraudulent Conveyance Law, against her former husband, where her claim arose solely out of their previous marital relationship and she had exercised her right to seek modification of the Probate Court orders. [100-101]

There was no merit to the claim of a former wife, seeking modification of alimony and support orders, that her former husband's having signed a lottery ticket made him the sole owner of the prize money, where G. L. c. 10, § 28, as interpreted by the State Lottery Commission's practice and regulations (961 Code Mass. Regs. §§ 2.03, 2.28 & 2.43), allows the commission to recognize more than one owner of a particular prize even though there may be only one ticket holder. [101-105]

[1]Gerald J. Nobrega, Thomas A. Wirtanen, Connecticut River Bank, State Lottery Commission and other defendants subsequently dismissed from the action.

[2]Nancy M. Nobrega *vs.* Gerald J. Nobrega.

COMPLAINT for modification of a judgment of divorce filed in the Middlesex Division of the Probate and Family Court Department on February 13, 1987.

A motion for leave to intervene was heard by *John S. MacDougall, Jr.,* J.

CIVIL ACTION commenced in the Superior Court Department on March 23, 1987.

The case was heard by *Katherine Liacos Izzo,* J., on a motion for summary judgment.

*David L. Chamberlain* for Jacqueline E. Welford.

*Thomas A. Wirtanen* for Nancy M. Nobrega & another.

*John C. Sandelli* for Gerald J. Nobrega.

*Gwendolyn R. Tyre* for State Lottery Commission.

*Laurence Field* for Connecticut River Bank.

GILLERMAN, J. Two related cases, one from the Superior Court and the other from the Probate Court, were heard together by this court for argument and disposition. The principal actors in both cases are Gerald Nobrega (Gerald), Nancy Nobrega (Nancy) who was Gerald's wife until 1975, and Jacqueline Nobrega, formerly Jacqueline E. Welford, whom Gerald married in August, 1990, and who was Gerald's companion during the events described below. At the center of the dispute in both cases are conflicting claims of ownership to a 1986 winning Megabucks lottery ticket worth $1,690,500. Jacqueline and Gerald claim that they are co-owners of the ticket; Nancy claims that Gerald is the sole owner.

We conclude that the regulations and practice of the State Lottery Commission acknowledging co-ownership of prize money and permitting payment through trust arrangements approved by the commission are authorized by the State lottery law, G. L. c. 10, §§ 22-36, and that Jacqueline and Gerald's claim should prevail.

1. *Background.* The Probate Court action is a complaint for modification of outstanding alimony and support orders brought by Nancy against Gerald as a result of the public announcement that Gerald was the holder of a Megabucks lottery winning ticket. Nancy alleged Gerald was sole owner

of the ticket. Because of that allegation, and because of an adverse ruling in the Superior Court action described below, Jacqueline attempted to intervene in the Probate Court proceedings to establish her claim to one-half of the cash prize. Her motion to intervene was denied, and she appealed.

The Superior Court action is, in substance, a complaint for declaratory judgment brought by Jacqueline in order to settle the conflicting claims of ownership to the winning ticket created by Nancy's proceedings in the Probate Court. Jacqueline has appealed from (i) the allowance of Nancy's motion for summary judgment dismissing the action against her and which, among other things, determined that Gerald was the sole owner of the ticket and (ii) the denial of Jacqueline's motion for summary judgment which sought a declaration confirming her one-half interest in the ticket. Gerald has also appealed from the denial of his motion for summary judgment which sought the declaration that he and Jacqueline were co-owners of the ticket. The judge's order in the Probate Court denying Jacqueline's intervention was based on the pendency of the proceedings in the Superior Court and on the summary judgment previously entered in those proceedings.

Our review of the grant of summary judgment in the Superior Court in favor of Nancy requires us to assume the truth of all the facts set forth in the affidavits filed by Jacqueline and Gerald. *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 603 (1990). Jacqueline and Gerald were also entitled to the benefit of any favorable inference. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983); *O'Gorman* v. *Rubinaccio*, 408 Mass. 758, 759 (1990).

Nancy filed an answer in the form of a general denial, except that she asserted in her answer "that Gerald signed the [winning lottery] ticket, and that said signing resolved any

issue of ownership, the defendant therefore demanding that the case be dismissed."[3]

The result is that we give no weight, in determining the facts, to Nancy's general denial, see *Godbout* v. *Cousens*, 396 Mass. 254, 263 (1985) ("Allegations in an unverified pleading are not accorded any evidentiary weight in determining whether there exists a genuine issue of material fact under rule 56[c]"), or to her affidavit which asserted only that she had no "dealings" with Jacqueline; we look only to the uncontradicted affidavit filed by Jacqueline (Gerald's affidavit was to the same effect). The facts, then, for the purpose of reviewing the allowance of Nancy's motion for summary judgment, are these.

In October, 1985, Jacqueline had three children, a daughter aged six, a son aged seven, and a daughter aged ten. Jacqueline was thirty-three; her lucky number was thirteen, and her pool number at work was fourteen. Jacqueline put those numbers together and arranged for Gerald to purchase weekly Megabucks game tickets using her numbers, from October, 1985, through March of 1986. Gerald and Jacqueline agreed that they would share any winnings equally. The ticket of March 15, 1986, bearing Jacqueline's numbers, won the lottery, bringing in a total of $1,690,500, payable in twenty annual installments of $84,575, before deductions for taxes. The net amount payable annually was, and continues to be, $63,393.75. Gerald and Jacqueline were, and are, in agreement that the lottery proceeds belong to both of them in equal shares.

On March 15, 1986, Jacqueline was in serious financial difficulty with the Connecticut River Bank on account of overdue loans which she "wished to resolve prior to acknowledging . . . [her] ownership of the winning ticket." It was

[3]Nancy's answer, the substance of which is repeated in her answers to interrogatories, provides us with a "guide" to Nancy's position. See *Godbout* v. *Cousens*, 396 Mass. 254, 262-263 (1985). She argued that Gerald was the sole owner of the ticket because he alone signed it; this meant that Jacqueline had no claim to the winnings, that as a result Jacqueline had no claim against Nancy, and therefore the case against Nancy should be dismissed.

agreed that Gerald should sign his name to the winning ticket in order to "preclude any problems of ownership of the ticket."[4] Then, on March 17, 1986, both Gerald and Jacqueline appeared at the main office of the State Lottery Commission (the commission), and asked that the winning proceeds be paid to them in equal shares. They were told that the commission would recognize only one winner for each ticket, but that they could create a trust in which each held a fifty per cent interest, and the commission would recognize the trust as the winner. The commission gave them a form of trust which the commission would accept.

. Gerald then delivered the winning ticket to the commission. He had signed the ticket; below his signature was the declaration that he had signed "as the sole recipient of this payment." Then, at the request of the commission, Gerald completed and signed Department of Treasury, Internal Revenue Service Form 5754, in which Gerald declared under oath that the "Persons to Whom Winning Payments are Taxable" are Gerald "½" and Jacqueline "½." He also signed Massachusetts Department of Revenue Form W-2G, "Statement for Recipients of Certain Gambling Winnings," disclosing again that Gerald and Jacqueline were each the owner of one-half the 1986 gross winnings of $84,575. Later the same day, the commission issued its check to Gerald for $63,393.75, the payment, net of taxes, due for 1986.

On May 8, 1986, Gerald and Jacqueline executed a trust agreement (the trust) with Jacqueline's principal creditor, the Connecticut River Bank, as trustee (the trustee). The trust was in the form suggested by the commission. Under the terms of the trust, the trustee was merely to act as the collecting and distributing agent for Gerald and Jacqueline; the trustee would receive the annual payment, less taxes, and, after deducting its fee, pay one-half of the balance to each of Gerald and Jacqueline. The commission accepted the

---

[4]The rear of the lottery ticket states that the ticket is a "bearer instrument" and further states in capital letters, "SIGN YOUR TICKET IMMEDIATELY."

trust as a valid instrument designating the payee of the prize money.

There, in substance, stood the record when, on October 29, 1987, the Superior Court judge, after numerous hearings, entered the first of two related orders (the first order). The second was dated January 20, 1989 (the second order), and both were in response to Nancy's motion for summary judgment.

a. *The first order.* The judge made certain "findings of fact as not being in dispute." Those "findings" were to the effect that in May, 1986, "Gerald voluntarily gave up his sole ownership of the future proceeds of his winnings to . . . [the] trustee." The judge concluded that "Gerald is attempting to alienate fifty (50) percent of his interest in his winnings . . . . This voluntary action of Gerald may not be used to defeat the interests of Nancy or his children." The judge also concluded that the transfer to the trust was precluded by the provisions of G. L. c. 10, § 28, which we set out in the margin.[5] The court ruled that Jacqueline had no recognizable claim against Nancy, that there was no actual controversy between those two parties, and Nancy's motion for summary judgment was allowed.

b. *The second order.* After entry of the first order, and prior to the entry of the second order, (i) Gerald filed a motion for reconsideration of the first order, which he supported by an affidavit, and later filed a motion for summary judgment supported by an affidavit which, in substance, tracked the affidavit previously filed by Jacqueline; (ii) Jacqueline

---

[5]The provisions of G. L. c. 10, § 28, as amended by St. 1973, c. 1002, § 3, are as follows:

"No right of any person to a prize shall be assignable, except that payment of any prize may be made to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled, and except that the commission may, by regulations adopted pursuant to section twenty-four, permit assignment of prizes for purposes of paying estate and inheritance taxes, or to a trust the beneficiaries of which are the prize winner, his mother, father, children, grandchildren, brothers, sisters, or spouse. Neither the commission nor the director shall be liable for the payment of a prize pursuant to this section."

and Gerald signed and filed an agreement for judgment to the effect that each was a fifty percent owner of the winning ticket, and that each had assigned his or her rights to the trust; (iii) the defendant Massachusetts State Lottery Commission (the commission) and Jacqueline filed a stipulation to the effect that the commission recognized two winners, Jacqueline and Gerald, and that the commission recognized the trust as a valid trust under c. 10, § 28; (iv) Jacqueline and the commission entered into an agreement for judgment requiring the commission to pay the proceeds of the winning ticket to the trust; and, finally, (v) Jacqueline filed a motion for summary judgment in accordance with her agreements for judgment with Gerald and the commission.

With this expanded record before her, and after a hearing, the Superior Court judge entered her second order. Again, the judge made "findings of fact," which she again said were "undisputed facts." She found, so far as here material, that, (i) by assigning his winnings to the trust, Gerald "attempted to extinguish his sole interest in said winning ticket. . . ," (ii) "[t]he plaintiff and the defendant Gerald Nobrega agreed to establish said trust to avoid the interests of Ms. Nancy M. Nobrega and the Nobregas' minor children in said funds . . . ," and (iii) "[s]tatements made by the plaintiff . . . that the plaintiff owns one-half of the winning ticket and its proceeds are self-serving and made to defeat the interests of Ms. Nobrega and the Nobregas' two children."

The judge ruled that (i) there was no genuine triable issue because it was "conceded by all parties that the winning ticket was purchased by Gerald Nobrega and presented for payment by him" with the approval of Jacqueline; (ii) Gerald Nobrega was "the sole and only owner of the said lottery ticket"; (iii) "the trust is invalid and fails"; and (iv) the statute, G. L. c. 10, § 28, was promulgated for the purpose of avoiding the result sought by Gerald and Jacqueline.[6]

---

[6]The judge ordered that final judgment be entered for Nancy pursuant to the first order; that Jacqueline's motion to vacate the first order was denied; that the winning ticket was the sole property of Gerald subject to the order of the Probate Court; that the commission was to pay all win-

To summarize: the judge ruled that (i) because Gerald bought, signed and presented the ticket for payment he was the sole owner of the ticket; (ii) the transfer of the winnings to the trust for the benefit of Gerald and Jacqueline, in substance, was a fraudulent transfer, see G. L. c. 109A, §§ 1, 7 and 9, and in violation of the prohibitions of c. 10, § 28, see note 5 *supra*, and (iii) the trust therefore failed, and the entire winnings were subject to the order of the Probate Court.

2. *Discussion.* At the center of the judge's rulings and orders was the finding that the motive for the transaction between Jacqueline and Gerald transferring all the winnings to the trust was Gerald's design to "defeat" the rightful claims of Nancy and their minor children. That inference of bad faith, so unfavorable to the parties opposing the motion for summary judgment, Jacqueline and Gerald, certainly cannot be made in favor of Nancy as the proponent of the motion, nor can it be made in the face of Jacqueline's uncontradicted affidavit which sets out an entirely benign history of her agreement with Gerald. The "findings of fact" made by the judge cannot stand.

The question of motive, or intent, might also arise when we invert the procedural posture of the case and consider whether Jacqueline or Gerald is entitled to summary judgment, either on their own motions for summary judgment or . in response to Nancy's motion for summary judgment. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974) ("Summary judgment, when appropriate, may be rendered against the moving party"); *Bonitz* v. *Traveler's Ins. Co.*, 374 Mass. 327, 332-333 (1978). Here we must be mindful that in cases involving a state of mind, where credibility of witnesses may be important, summary judgment may be inappropriate. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984) ("[t]he granting of summary judgment in a case

---

nings to Gerald subject to the order of the Probate Court; that Gerald's motion for summary judgment was denied; that Jacqueline's and Gerald's agreement for judgment was vacated; and that the commission's and Jacqueline's stipulation agreement was vacated as invalid. The appropriate final judgments were thereafter entered.

where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored"). Nevertheless, there first must be "some indication before the motion judge" that state of mind is a live issue in the case. *Godbout* v. *Cousens*, 396 Mass. at 259. Nancy's unverified general denial provides no such indication. As we have already said, allegations of an opposing party in unverified pleadings have no evidentiary weight in determining whether there is a genuine issue of material fact. *Godbout* v. *Cousens*, *supra* at 263. The central task under rule 56 is "to look beyond the formal allegations of fact in the pleadings 'and to determine whether further exploration of the facts is necessary.'" *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. at 87, quoting from *Hahn* v. *Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). Certainly Jacqueline's affidavit provides no indication that her agreement to share the winnings with Gerald was devised to defraud Nancy. The winning numbers, after all, were unmistakably those chosen by Jacqueline.

Moreover, the premise implicit in the judge's inference of bad faith by Gerald and Jacqueline is faulty. It is important to recall that Gerald and Nancy were divorced in 1975, and the lottery windfall occurred in 1986. Even assuming that Nancy, as a result of that windfall, was entitled to a modification of the outstanding alimony and support orders,[7] see G. L. c. 208, § 37, it is a far different matter to conclude that Nancy, in 1986, was a "creditor" of Gerald for purposes of the uniform fraudulent conveyance law. See G. L. c. 109A, §§ 1 et seq. The term "creditor" is defined in § 3: "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." A wife, where divorce proceedings are imminent, may qualify as a creditor under c. 109A and may "complain of conveyances designed to frustrate the right to alimony or assignment of property." *Yacobian* v. *Yacobian*, 24 Mass. App. Ct. 946, 947 (1987). Compare *Aronson* v. *Aronson*, 25 Mass.

---

[7] A substantial increase in alimony and child support was not awarded until February 27, 1990, almost four years after the challenged transfer.

App. Ct. 164, 167 (1987). No case, to our knowledge, has held that a divorced spouse seeking modification of outstanding orders long after the divorce became final is a "creditor" entitled to challenge prior transfers of property. Compare *Savides* v. *Savides*, 400 Mass. 250, 253 (1987). We decline to do so here. Nancy's status as Gerald's former wife does carry with it significant rights in her favor, see G. L. c. 208, §§ 34, 37, but her continuing right to modification of support orders upon a material change in circumstances does not make her Gerald's "creditor" for Nancy's lifetime. There must be special circumstances unrelated to the prior marriage to warrant that result. See *Yacobian* v. *Yacobian*, *supra* at 947. Given the fact that Nancy retains and has exercised her statutory right to modification and that her claim arises only out of their previous marital relationship, we find no special circumstances that would make Nancy a creditor of Gerald for c. 109A purposes.

The result is that, from whichever point of view we approach summary judgment, we must proceed from an untainted and uncontradicted oral agreement between Jacqueline and Gerald to share equally the winnings from the lottery ticket. We also have the undisputed facts, to which we have been directed by Nancy, see note 3 *supra*, that Gerald alone signed the ticket, received the first payment, and thereafter joined with Jacqueline in assigning their respective winnings to a trust for their equal benefit. On this footing, the motions and affidavits present no genuine issue of material fact, but there remain the questions of law upon which the judge ruled[8] and upon which Nancy, in the end, places her reliance:[9] (i) did the fact that Gerald signed the ticket preclude any claim to ownership by Jacqueline? (ii) did the

---

[8]The judge ruled that G. L. c. 10, § 28, "permits only one person [the person who signs the ticket] to be the prize winner of a lottery ticket, and requires that trust beneficiaries of lottery winnings be restricted to the prize winner [or those family members specified in § 28 of which Jacqueline was not then one]." Because the trust would "circumvent" the provisions of § 28, the judge also ruled that the trust "is invalid and fails."

[9]See note 3 *supra*, and related text.

transfer to the trust violate the prohibitions of G. L. c. 10, § 28?

The more important provisions of the State lottery law, G. L. c. 10, §§ 22-36, as inserted by St. 1971, c. 813, § 2, which bear on this case may be quickly summarized. The State Lottery Commission (the commission) in the office of the State Treasurer, § 23, is authorized to conduct a State lottery, § 24. The commission is authorized by § 24 to determine the number and sizes of the prizes on the winning tickets, and "the manner of payment of prizes to the holders of winning tickets. . . ." Section 24 also authorizes the commission to establish "such rules and regulations as it deems necessary or desirable. . . ." Section 28, see note 5 *supra*, provides that the "right of any person to a prize" shall not be assignable, with the following relevant exceptions: (i) "any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled," and (ii) by regulation the commission may permit assignments "to a trust the beneficiaries of which are the prize winner [or members of his immediate family or spouse]." The required regulation was subsequently promulgated. See 961 Code Mass. Regs. § 2.28 (1985).

While § 24 provides that the commission is authorized to determine the manner in which prize money is to be paid to the "holders of winning tickets," there is nothing in that section which deals with the ownership of the prize money which may be payable to a holder of the winning ticket. The owner of the winnings and the holder of the winning ticket may not be the same person, or, as alleged here, the holder of the winning ticket may be a coowner of the prize money with another person.

It is left to § 28 to recognize the possible incongruity of ticket holder and prize owner, and to provide the means by which the rightful owner may prevail.

Section 28 provides that prize money shall be paid to the ticket holder, who may not assign his right to the prize

money[10] unless the transfer falls within one of the exceptions described in that section. As noted, one exception permits the commission to pay the prize to "any person" who obtains an "appropriate judicial order." A second exception permits the commission to recognize a trust as a valid payee of prize money but only if the trust beneficiaries are either members of the holder's immediate family or the "prize winner." The terms, "any person" and "prize winner" may be construed to include the plural form. See G. L. c. 4, § 6, Fourth.

The first exception permits the resolution, by litigation, of conflicting claims to prize money, while the second exception permits the nonjudicial settlement of more than one claim to prize money by a trust arrangement. Both exceptions are designed, in part, to permit the commission to recognize that there may be more than one owner of the prize money even though there may be only one ticket holder.

This interpretation of the State lottery law is supported both by the commission's practice and its regulations. When Jacqueline and Gerald together appeared at the office of the commission to claim the prize money as joint owners, the commission accepted their representation of coownership, suggested they execute a trust for their equal benefit, and required Gerald to execute Federal and State tax forms disclosing the fact that the winnings were taxable to Gerald and Jacqueline in equal shares. A representative of the commission testified in deposition that these events conformed to the commission's practice.

The commission's regulations also recognize coownership of prize money.[11] 961 Code Mass. Regs. § 2.28 (1985) of

---

[10]The prohibition against unpermitted assignments was, no doubt, intended to prevent the creation of a secondary, unregulated market in winning tickets, a legitimate legislative goal.

[11]The commission's insistence that it will "*recognize* only one (1) person as owner of a ticket," 961 Code Mass. Regs. § 2.39 (1985) (emphasis added), is a rule designed only to facilitate the administration and distribution of prize money, and to prevent the exposure of the commission to numerous claims of ownership. See the last sentence of c. 10, § 28, note 5, *supra.* Section 2.39 was amended in 1987 to provide that the commission will make payment to only one person "regardless of the number of persons claiming ownership of the prize winning ticket." See 961 Code Mass.

the commission's regulations have, since prior to 1986, provided that in the event of a dispute "relative to any prize, the Director may . . . refrain from making payment of the prize pending the determination . . . by a court of competent jurisdiction relative to the same." 961 Code Mass. Regs. § 2.43 (1985) acknowledges, as it did when the winning ticket was drawn, that the person claiming the prize may be "claiming on behalf of a group." Finally, 961 Code Mass. Regs. § 2.03 was expanded in November, 1988, to provide a definition for "prize winner" which confirms all prior practice and regulations with regard to the case where there is more than one owner of prize money:

> "*Prize winner* shall be defined as the individual who represents himself to be the winner of a single prize *or* one or more individuals who represent themselves as winners of a portion of a single prize as identified on Internal Revenue Service Form 5754 at the time the claim is filed and reported as such to the Internal Revenue Service and the Department of Revenue." 961 Code Mass. Regs. § 2.03 (1989). (Emphasis in original.)

Although we have referred to amendments adopted after March 17, 1986, the date this claim was made to the commission, we accept the commission's representation that the later amendments merely clarified its position from the outset.

Courts frequently defer to an agency's interpretation of its own statute particularly "where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute." *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 442 (1972), citing *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964). *Rock* v. *Massachusetts Commn. Against Discrimination*, 384 Mass. 198, 204 (1981). *Amari* v. *Rent Control Bd. of Cambridge*, 21

Reg. § 2.39 (1988). The commission's brief makes the point that the commission will "recognize" only one person as ticket holder, but it may, and does, "acknowledge" joint ownership of winning tickets by accepting trust arrangements.

Mass. App. Ct. 598, 604-605 (1986). See also *School Comm. of Springfield* v. *Board of Educ., supra* at 441 n.22. We accept the commission's interpretation of § 28, and we approve the stipulation of the commission, vacated by the Superior Court judge, that the commission recognizes Jacqueline and Gerald as the two winners of the lottery prize money, and that the trust executed by them, for their own benefit as prize winners, is a valid trust established under § 28.

The keystone of Nancy's argument — the undisputed fact that Gerald signed the ticket, making him, irreversibly, the sole owner of the prize money — has no basis in the statute, the commission's regulations or its practice.

Finally, any doubt created by the procedure adopted by Gerald, Jacqueline and the commission, acting in unison, as their stipulations and agreements for judgment attest, will be put to rest by an appropriate judgment entered in the Superior Court declaratory judgment proceedings commenced by Jacqueline. That action is expressly contemplated and authorized by § 28, and § 2.28 of the commission's regulations (the director may refer any dispute over prize money to a court for final determination).

We conclude that the judgment entered in the Superior Court in favor of Nancy must be reversed. A new judgment is to be entered on the motions for summary judgment filed by Jacqueline and Gerald declaring Jacqueline and Gerald co-owners in equal shares of the prize money and that the trust they executed for their own benefit is valid and enforceable in accordance with its terms. All other claims, counterclaims and cross-claims are denied as moot or not meritorious. Jacqueline's appeal from the denial of her motion to intervene in the Probate Court proceedings brought by Nancy is dismissed as moot.

*So ordered.*