Flatley, J.
Plaintiff Francis Bonasia (“Bonasia”) brought this action in one count pursuant to G.Lc. 93A to recover statutory damages for the refusal of the defendant, Hanover Insurance Company (“Hanover”), to pay his claim for the theft of his automobile which was insured by Hanover.
Hanover filed a Dist/Mun. Cts. R. Civ. P., Rule 56 motion for summary judgment on the grounds that it had noduty to pay Bonasia under his policy ofinsurance because he voided his coverage by refusing to submit to an examination under oath and otherwise failing to cooperate in the investigation of his claim.
The court allowed Hanover’s summary judgment motion and dismissed Bonasia’s complaint. From this action, Bonasia has appealed.
Bonasia’s one-count complaint under G.Lc. 93A alleges two, separate violations of thatstatute: namely, (1) that Hanover unfairly denied him coverage for the theft of his insured vehicle; and (2) that Hanover violated G.Lc. 93A and c. 176D by idling to issue timely notice of its decision to deny coverage. The propriety of the summary judgment entered agdnst Bonasia on these claims depends on the absence of any dispute of material facts in the pleadings and affidavits presented to the trial court. Cefalu v. Globe Newspaper Co., 8 Mass. App. Ct. 71, 71-72 (1979).
As to the first prong of Bonasia’s complaint, the pleadings, lengthy affidavits of Hanover’s claims representative, Joan Ogiba and its then legal counsel, Jeremiah Murphy, and the counter-affidavit of Bonasia set forth divergent accounts of Bonasia’s insurance cldm and Hanover’s ensuing investigation. Bonasia avers that on the night of March 6,1989, he parked his car on the surface road underneath the Central Artery in downtown Boston and left with a friend, James Hdloran, in Halloran’s car. Upon his return later in the evening, he discovered that the car was missing and filed a stolen motor vehicle report with the Boston Police Department The next day, March 7, 1989, Bonasia filed a theft loss claim with his Hanover agent.
According to Hanover, it began its investigation on March 8,1989 by taking a tape recorded statement of Bonasia in which he alleged^ refused to provide details, purportedly critical to Hanover’s investigation, as to where he had gone with Halloran and what he had done after he left his car. Hanover also searched its own files for other insurance claims by Bonasia, conducted a credit check on him (an old tax lien, since discharged, was discovered) and researched such matters as the purchase price and trade-in value of the car owned by Bonasia prior to the car that was stolen.
Hanover then sent three letters requesting information which Hanover avers was never provided by Bonasia. Bonasia claims, however, that he provided all of the requested information and produced all requested documentation that was in his *89 possession.[1]
On April 7,1989, Hanover’s representative told Bonasia by telephone that he would be required to submit to an “Examination Under Oath.” Bonasia went to Hanover’s office on April 10, 1989 and demanded that the examination be done forthwith. Bonasia avers that he was willing to participate at once, that Hanover’s lawyer would not schedule the examination for a month and that such delay evidenced Hanover’s refusal to settle his claim. Hanover’s then counsel, Jeremiah Murphy, avers that he spoke to Bonasia by telephone on April 10,1989 and that Bonasia indicated that at the “Examination Under Oath,” he would not answer questions as to his whereabouts after he left his car.
Hanover’s claims representative subsequently directed a letter to Bonasia reserving its rights and denying coverage. The letter was not postmarked until April 10, 1989, thirty-three (33) days after Hanover received Bonasia’s claim on March 8,1989.
Counsel for Bonasia sent Hanover a G.Lc. 93A demand letter dated April 18,1989. Hanover responded on May 10,1989 by denying coverage and alleging that Bonasia’s actions constituted failure to cooperate in the investigation.
Suit was commenced on June 9,1989.
Hanover was notified by the Boston Police Department on June 30, 1989 that Bonasia’s car had been recovered in Fort Lauderdale, Florida on June 14,1989.
1. It was incumbent upon Hanover in moving for summary judgment pursuant to Rule 56, Hopkins v. F. W. Woolworth Co., 11 Mass. App. Ct. 703, 707 (1981) to demonstrate that no issue of material fact existed as to Bonasia’s failure to cooperate, and that it was thus entitled to judgment as a matter of law on Bonasia’s claim for unfair denial of insurance coverage. It is apparent from our recital of the parties’ contrasting allegations and averments that Hanover has failed to satisfy its Rule 56 burden, for there remains in this case not only a dispute as to the actual conduct of Bonasia, but also the question of whether such conduct amounted to a failure to cooperate with a reasonable investigation by Hanover.
The parties’ conflicting assertions presented questions of witness or affiant credibility which should not have been resolved on a motion for summary judgment. Attorney General v. Bailey, 386 Mass. 367, 370 (1982); Junkins v. Slender Woman, Inc., 7 Mass. App. Ct. 878 (1979). Accepting as true Bonasia’s allegations, Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 624 (1985), it remains unclear whether he refused to provide requested documentation or submit to any examination, or whether the additional information sought by Hanover as to Bonasia’s activities on the night in question was even material to a proper investigation and settlement of Bonasia’s claim. See Darcy v. The Hartford Ins. Co., 407 Mass. 481, 488 (1990); Morrison v. Lewis, 351 Mass. 386, 390 (1966). Hanover’s simple assertion, denied by Bonasia, that the possibility of fraud justified its questionable inquiries or explained Bonasia’s alleged conduct merely raises additional factual issues as to Bonasia’s intent or state of mind. Welford v. Nobrega, 30 Mass. App. Ct. 92, 99 (1991), citing Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1986).
Given these and other issues of material fact, it is evident that the case was not ripe for summary judgment on Bonasia’s first claim of an unfair denial of insurance coverage. A trial on the merits is required.
2. No issue of fact remains, however, with respect to Bonasia’s second claim that Hanoverviolated G.Lc. 93A ande. 176D by failing to issue timely notice of its decision to deny coverage.
General Laws c. 176D, §2 proscribes unfair and deceptive acts in the business of insurance which are defined in §3 to include:
(9) Unfair claim settlement practices: an unfair claim settlement practice shall consist of any of the foBowing acts or omissions:
*90 (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; ....
Pursuant to G.Lc. 176D, §11, the Commissioner of Insurance may promulgate reasonable rules and regulations as are necessary or proper to identify specific acts or practices which are prohibited by c. 176D, §3. Section(2) (k) of 211 CMR 89.04, promulgated by the Commissioner, provides in part
Under no circumstances shall the interval between initial reporting of a claim and payment of that claim exceed four weeks unless the insurer potentially liable for the claim has notified the claimant in writing of the reason for the delay or has denied the claim.
The record in this case establishes that Hanover’s notice was not sent to Bonasia until at least thirty-three days after the filing of his claim. This clear violation of 211 CMR 89.04(2) (k) constituted an unfair and deceptive act by Hanover in violation of G.Lc. 176D, §3.[2] Such violation entitled Bonasia to the consumer protection remedies afforded by G.Lc. 93A, §9. See G.Lc. 93A, §9 (1); Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977).
Theunequivocal,mandatory languageof211 CMR89.04(2) (k) renders unpersuasive and immaterial Hanover’s defense that Bonasia was kept informed of the ongoing investigation by its claims representative, and that the denial notice was sent out in substantial compliance with the regulation.
There is also no merit to Hanover’s additional assertion that 211 CMR 89.04(2) (k) was subsequently “modified” by the promulgation of 211 CMR 123.05 (1). The express intent of 211 CMR 123 is:
to establish a procedure for approval of direct payment and referral shop plans by motor vehicle insurers for collision, limited collision and comprehensive insurance claims and to establish the minimum requirements for such plans.
Hanover relies on that portion of Section 123.05(1) which provides:
Nothing in this section shall be construed to affect the right of any insurer to delay paymentfor aperiod of time reasonably necessary to investigate any claim before authorizing repair work or making payment for such claim.
Contrary to Hanover’s contention, there is no conflict between the regulations relied upon by the parties. Section (2) (k) of 211 CMR 89.04, relied upon by Bonasia, requires either payment of a claim or written notice to the insured of reasons for delay in paymentwithin four weeks of the date of the claim; 211 CMR 123.05(1), relied upon by Hanover, affords an insurer the right to delay payment while investigating. These sections, when read together, simply require an insurer to send timely notice of its intent to delay under 9.04(2) (k) inorderto invoke its 123.05(1) rightto delaypayment while investigating a claim.
Bonasia was thus entitled to judgment in his favor pursuant to G.Lc. 93A on the second prong of his complaint pertaining to Hanover’s non-compliance with 211 CMR 89.04(2) (k), and resulting violations of G.Lc. 176D and c. 93A. Summary judgment, *91 when appropriate, may be rendered against the moving party. Bonitz v. Traveler's Ins. Co., 374 Mass. 327, 332-333 (1978). Pursuant to this Rule 56 authority, we hereby order the entry of partial summary judgment for Bonasia
Partial summary judgmentfor Bonasia as to Hanover’s liability on the second prong of Bonasia’s complaint does not obviate the necessity of a trial on the merits on the first prong alleging unfair denial of insurance coverage. The reason is that Bonasia’s complaint seeks actual and punitive damages, attorneys’ fees and costs pursuant to G.Lc. 93A, §9. An assessment of c.93A damages requires evidence of a causal connection between each unfair and deceptive act and the specific losses for which the plaintiff seeks recovery. DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 101 (1983); Wallace v. American Mfgrs. Mut. Ins. Co., 22 Mass. App. Ct. 938, 939 (1986). The damages sustained by Bonasia in consequence of Hanover’s unfair denial of insurance coverage, if proven at trial, may differ from and monetarily exceed any loss sustained as a result of Hanover’s non-compliance with 211 CMR 89.04(2) (k). Bonasia’s right to prove his entitlement to the full measure of c. 93A relief, including attorneys’ fees, Jet Line Services v. American Employers’ Ins. Co., 404 Mass. 706, 718 (1989), and multiple damages would be unfairly foreclosed if recovery were to be limited to one unfair and deceptive act by the entry of judgment against Hanover solely on the second prong of Bonasia’s complaint
3. Accordingly, the trial court’s allowance of summary judgment for defendant Hanover is hereby vacated. This matter is returned to the Haverhill Division for a trial on the merits on the issue of whether plaintiff Bonasia cooperated in the investigation of his claim and is thus entitled to coverage under his policy of insurance with Hanover. Partial summary judgment for plaintiff Bonasia is to be entered against Hanover for its failure to issue a timely notice of claim denial, and a hearing for assessment of G.Lc. 93A damages is to be held. So ordered.

The title certificate demanded by Hanover was, for example, in the custody of the lienholder. The vehicle registration was in the stolen car.

 Title 211 of the Code of Massachusetts Regulations is captioned “Regulations Concerning the Appraisal and Repair of Damaged Motor Vehicles.” Section 89.04 of 21.1 CMR is entitled “Procedures for the Conduct of Pre-Inspections, Appraisals and Intensified Appraisals.” These captions suggest an issue of the applicability of these sections to Bonasia’s claim for the theft of, rather than damage to, his insured vehicle. However, neither party has argued such issue either before this Division, or apparently in the trial court
We note that 211 CMR 89.04(2) (k) does cover “comprehensive claims not involving the repair of damages to a vehicle....” Further, 211 CMR 75.05 (2), pertaining to deferred processing and payment of fraudulent claims for the theft of insured motor vehicles, affords the insurer the right to delay claim settlement “notwithstanding the provisions of 211 CMR 89.00....” The need for an exception of 211 CMR 89.00 from procedures governing fraudulent theft loss claims suggests that such regulation applies to all other theft loss claims, including the claim filed by Bonasia herein.