Jennifer HOULT, Plaintiff,

v.

David Parks HOULT, Defendant,

Zene Athans Hoult, Intervenor–Defendant.

Civ. A. No. 88–1738–DPW.

United States District Court, D. Massachusetts.

Sept. 6, 1994.

Marjorie B. Lewis, Adrienne M. Markham, Goulston & Storrs, Ann G. Berwick, Atty. General's Office, Environmental Protection Div., Boston, MA, for Jennifer Hoult.

Stephen N. Lander, Joan Curran, McGrath & Kane, Boston, MA, Jordan L. Shapiro, Shapiro & Shapiro, Malden, MA, Edward J. Collins, Wayland, MA, for David Parks Hoult.

Richard J. Grahn, John Fitzpatrick, Looney & Grossman, Boston, MA, for Zene Athans Hoult.

WOODLOCK, District Judge.

ADOPTED as an ORDER of this Court pending resolution of the issues on the merits for final judgment.

*REPORT AND RECOMMENDATION ON MOTION TO WITHDRAW OR MODIFY LIS PENDENS, ATTACHMENTS AND PRELIMINARY INJUNCTION (# 161)*

COLLINGS, United States Magistrate Judge.

After a jury trial, judgment was entered on behalf of the plaintiff in the amount of $796,876.71. After a hearing held on August 4, 1993, the Court[1] allowed the plaintiff's motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to encumber certain properties of the defendant with notices of lis pendens and attachments and issued a preliminary injunction. Zene Athans Hoult (hereinafter, "Zene") was not represented at the hearing on August 4th. On September 15, 1993, the Court[2] allowed the Application of Zene to Intervene (# 154) on the basis of her interest in the properties encumbered.

Presently before the Court is Zene's Motion to Withdraw or Modify Lis Pendens, Attachments and Preliminary Injunction (# 161). The motion was heard on September 30, 1993. At the hearing, it became clear that the motion in the first instance was based on a pure question of law.

■ The plaintiff claims that certain property held by the Hoults as tenants by the entirety,[3] later conveyed to real estate trusts

---

1. Mazzone, S.D.J.

2. Collings, U.S.M.J.

3. Plaintiff alleges the properties transferred into real estate trusts are: 9 Lake Street, Wayland, Massachusetts; 99 Silver Lake road, Bellingham, Massachusetts, and 45 LaSalle Avenue, Framingham, Massachusetts. Defendant David Hoult's present wife, Zene, is the trustee of each of the real estate trusts to which the properties were transferred, and has a beneficial interest of 95% in each trust. David Hoult has the remaining 5% beneficial interest. Those properties were transferred from David and Zene Hoult, as tenants by the entirety, to the trusts for $1.00 con-

sideration. Additionally, this Court has previously attached David Hoult's interest in the primary residence located at 9 Heard Road, Wayland, Massachusetts. It is noted that this property was originally purchased by Zene and her ex-husband Michael Athans, on May 23, 1977. Upon their divorce in 1982, the deed to the property was transferred to Zene's name and was owned solely by her prior to her marriage in 1986 to David Hoult. Subsequently the property was transferred to both their names, and then again transferred into a real estate trust, whereby Zene retained a 75% beneficial interest, and David Hoult a 25% interest. *See* Affidavit of Zene Hoult, # 161, page 2. There is a homestead exemption filed on the property.

while the litigation was pending but prior to judgment, were fraudulent conveyances under the Massachusetts Fraudulent Conveyance Act, M.G.L.A. Chapter 109A, and therefore could be set aside, making the asset available to satisfy the large judgment to the plaintiff. Zene takes the position that the lis pendens/preliminary injunction must be dissolved or modified because any conveyances which took place before a judgment entered in plaintiff's favor cannot, as a matter of law, be set aside on the ground that they were "fraudulent" in nature. Put another way, Zene argues that one who has a tort claim which has not been reduced to judgment cannot be found to be a "creditor" under the statute.

Massachusetts has adopted the Uniform Fraudulent Conveyances Act (UFCA). *In re Morse Tool, Inc.*, 108 B.R. 389 (Bkrtcy. D.Mass.1989). The Massachusetts Fraudulent Conveyances Act, M.G.L.A. Chapter 109A § 7 provides:

> Every conveyance made, and every obligation incurred with actual intent ... to hinder, delay or defraud either present or future creditors is fraudulent as to both present and future creditors.

Section 9 provides, in part:

> (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchase—
>
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the claim, or
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

■ Thus, in order to have standing to invoke the rights under the statute and to set aside the conveyances, plaintiff must establish that she is a "creditor" within the meaning of the statute. It is well settled that the statute does not create new claims—in order to benefit from the rights the statute creates, a person must qualify as a creditor. *Jorden*

*v. Ball*, 357 Mass. 468, 470, 258 N.E.2d 736, 737 (1970).

In the instant case, Zene does not deny that certain transfers of properties owned by her and the defendant as tenants by the entirety were made during the course of the pending litigation in this matter. However, the defendants contend, inter alia, that they were free to convey, transfer, or otherwise dispose of any and all assets until the date upon which liability to the plaintiff was fixed. Therefore, they contend that prior to the time plaintiff actually obtained a judgment against the defendant on her claims for damages, the defendant and Zene's transfers of property could not be considered fraudulent. Until such time as a judgment was obtained, Zene asserts that plaintiff's claims were contingent, or not yet matured. Thus, Zene contends that the plaintiff could not have been considered a "creditor" of the defendant at the time the conveyances were made and, therefore, has no standing to raise the issue of fraudulent conveyance.

■ Plaintiff points out that § 1 of the statute defines the term "creditor" to mean "a person having a claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." M.G.L.A. Chapter 109A, § 1. This language is used again in the definition of "debt", which is defined as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." *Id.* The language does not differentiate between contractual liability and tort liability. The legislative intent in defining the term "creditor" so broadly was to extend the benefits and protection to persons having claims under the statute, irrespective of the actual status of the claim— i.e., whether the claim had vested or not. *Blumenthal v. Blumenthal*, 303 Mass. 275, 276–7, 21 N.E.2d 244, 245–6 (1939).

There is no Massachusetts case which answers the question of whether a plaintiff who has filed a tort suit based solely on personal injuries is a "creditor" of the defendant named in the suit within the meaning of the statute prior to entry of judgment in the plaintiff's favor. A review of the Massachusetts cases applying the statute is instructive but not dispositive.

Zene relies heavily on the case of *Ward v. Grant,* 9 Mass.App.Ct. 364, 366–8, 401 N.E.2d 160, 162–3 (1980). In that case, Ward appealed a dismissal of a complaint brought pursuant to § 9, which alleged that the debtor defendant had conveyed his interest in realty to his wife in order to remove his assets from Ward's reach. The property in question was a motel-restaurant complex and had originally been held by the defendant's wife, purchased with her own money and credit during the course of their marriage. Both the debtor husband and wife operated the business together. Six years prior to the purchase of the property, and prior to his marriage, the defendant husband had executed six promissory notes payable to the plaintiff. These notes became due and payable prior to the purchase as well. Subsequently, the wife, Sharon, decided to make improvements, and sought a loan from the Small Business Administration (SBA). At the time she made the application, she was advised that her chances for approval of the loan would be improved if she and her husband held the property jointly. As a result, she conveyed her property to the defendant husband and herself as tenants by the entirety. Subsequently, she was notified that the SBA had denied the loan request. At that point, steps were taken to reconvey the property back to the wife, however, the property was not actually transferred until ten days after the plaintiff had filed suit to collect on the notes and five days after defendant received notice of the suit. The deed was recorded nineteen days after suit was filed. The Court found that under these circumstances the transfer was not fraudulent.

However, Zene and the defendant's reliance on *Ward* is misplaced. There was no question that under any construction of the statute, Ward was a "creditor" of the defendant before any transfers were made because the notes had become due and payable prior to that date.

In *Blumenthal v. Blumenthal, supra,* 303 Mass. at 276–77, 21 N.E.2d at 245–46, a wife obtained a judgment against her husband in New York which was not satisfied. She brought suit in Massachusetts alleging that her husband had transferred certain property to hinder her efforts to collect the judgment. The Supreme Judicial Court decided that the fraudulent conveyance law did not operate so as to lift the bar against one spouse suing another to collect a judgment. However, in the course of the decision, the Supreme Judicial Court wrote:

> It is true that the plaintiff comes within the literal description of a creditor as set forth in Chapter 109A, § 1, as she 'is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent' ... [citations omitted] The legislative intent in defining the term creditor was to extend the benefits of the fraudulent conveyance statutes to those having unliquidated, unmatured or contingent claims; but the extension was based entirely on the nature of the claim ...

*Id.,* 303 Mass. at 276–7, 21 N.E.2d at 245–6.

The breadth of the term "creditor" was illustrated by the Supreme Judicial Court's decision in the case of *Jorden v. Ball, supra,* 357 Mass. 468, 258 N.E.2d 736. In that case, a wife brought a petition for separate support which was granted. Thereafter, the husband conveyed some real estate he owned. Subsequently, the wife filed for divorce, and, as part of the decree, it was ordered that the property be conveyed to her on the ground that the transfer was fraudulent. *Id.,* 357 Mass. at 470, 258 N.E.2d at 737. The issue was whether, at the time of the transfer, the wife was a "creditor" within the meaning of the uniform fraudulent conveyance act. *Id.* The Court held that she was. The Court noted that at the time of the conveyance, the wife had the right to maintenance and support from her husband. *Id.,* 357 Mass. at 471, 258 N.E.2d at 738. There also "... existed a possible claim to the husband's assets pursuant to a divorce decree, the cause for which had already occurred." *Id.* The Court wrote:

> The question is whether the unperfected and contingent status of these claims disqualifies the plaintiff as a creditor under c. 109A. But the definition of a creditor in c. 109A explicitly includes claims that are "unmatured" or "contingent." We are of [sic] opinion that this language includes as

"creditor" a woman in the plaintiff's circumstances whose claim, although not as yet reduced to a legal obligation, merely awaits some further step on her part which, as in the present circumstances was likely to occur. In view of the lengthy estrangement and separation decree it was not unlikely that the plaintiff might seek a divorce, which in fact she did two weeks after commencing this suit. Thus, apart from c. 109A, she had an independent basis for bringing proceedings against her husband, and she could invoke the remedy provided in c. 109A in aid of that right.

*Jorden v. Ball, supra,* 357 Mass. at 471, 258 N.E.2d at 738. *See also DuMont v. Godbey,* 382 Mass. 234, 415 N.E.2d 188 (1981); *Aronson v. Aronson,* 25 Mass.App.Ct. 164, 516 N.E.2d 184 (1987).

However, the definition is not without its limitations. In the case of *Yacobian v. Yacobian,* 24 Mass.App.Ct. 946, 947, 508 N.E.2d 1389, 1389–90, *rev. denied,* 400 Mass. 1104, 511 N.E.2d 620 (1987), the Court held that:

A spouse in circumstances where divorce proceedings are "imminent" may qualify as a creditor under c. 109A and may 'complain of conveyances designed to frustrate the right to alimony or assignment of property.' *DuMont v. Godbey,* 382 Mass. 234, 237, 415 N.E.2d 188 (1981). *Jordan [Jorden] v. Ball,* 357 Mass. 468, 472, 258 N.E.2d 736 (1970). Marriage, alone, however, does not make spouse a potential creditor under G.L. c. 109A, and divorce proceedings do not subject all transfers made during the marriage to retrospective scrutiny under that statute.

*Id.*

In the case of *Welford v. Nobrega,* 30 Mass. App.Ct. 92, 565 N.E.2d 1239 (1991), *on appeal* 411 Mass. 798, 586 N.E.2d 970 (1992), the Court held that:

No case, to our knowledge, has held that a divorced spouse seeking modification of outstanding orders long after the divorce became final is a "creditor" entitled to challenge prior transfers of property.

*Id.,* 30 Mass.App.Ct. at 101, 565 N.E.2d at 1244 (citation omitted).

Massachusetts cases defining what is meant by "future creditors" are also instructive. Under both statute and case law, present or future creditors have the ability to set aside a conveyance which was made with actual intent to defraud. For example, in *David v. Zilah,* 325 Mass. 252, 256, 90 N.E.2d 343, 344–5 (1950), the plaintiff sought to establish the indebtedness of the defendant Antone Coury arising out of a loan made to Coury in 1928, and also the indebtedness of the defendant Julia Coury, the wife of Antone, arising out of a judgment obtained against Antone and Julia Coury in 1947. The plaintiff also sought to reach and apply the interest of the defendants in two pieces of real estate which plaintiff alleged were conveyed by the defendants to their sons, Joseph and Ernest Coury. Plaintiff alleged the conveyances were made fraudulently, with the intent to hinder, delay and defraud creditors. The case was referred to a master.

The master found that on June 29, 1928, plaintiff lent Antone Coury $1750; there were no writings in connection with the loan. Payments were made by Antone on the debt, and by March 2, 1931 the balance due was $1200. No further payments were made. Years later, on December 17, 1935, the plaintiff lent $1000 to Antone Coury and his wife, Julia, and they executed a promissory note for that amount, and Antone orally promised to pay the balance owed on the 1928 loan. About seventeen years later, on October 3, 1947, plaintiff obtained a judgment against the defendants on the note for $1711.40 plus costs, which remained unsatisfied.

In 1931, the defendants Antone and Julia Coury held title to a parcel of real estate, and Antone owned another piece of real estate as well. On June 4, 1931 both of the parcels were conveyed by the Courys, by deeds recorded June 15, 1931, to their son Joseph. Although the properties had mortgages on them, there was equity in each of them. Joseph paid nothing for the conveyances, but assumed the mortgage on one piece of property, and took subject to the mortgage on the other. In June or July 1931, plaintiff learned of the conveyances from a newspaper, spoke to Antone Coury about them, and was in-

formed that the transfers "did not mean a thing"; that he made them to save himself, and assured the plaintiff he would be paid on the $1200 loan made in 1928. In 1944 Joseph Coury conveyed the property to his brother Ernest, prior to Joseph's marriage. No consideration was given. The conveyances were "part of a general family arrangement" to keep the titles out of Antone Coury's name, although Antone Coury continued to be the beneficial owner of the properties. Other findings were made by the master that the properties were conveyed for the purpose of hindering, delaying, or defrauding creditors.

The Court reversed the interlocutory and final decrees for the plaintiff on the grounds that the statute of limitations barred recovery of the 1928 loan. The Supreme Judicial Court also noted that since the plaintiff's judgment ran only as against Antone and Julia Coury, the decree was erroneous in establishing liability on the parts of Joseph and Ernest Coury to satisfy any deficiency for the underlying judgment which could not be satisfied by the proceeds of the sale of the properties. However, the Court also stated:

> In all other respects the decree of the court below was right. The facts found by the master show that the conveyances to Joseph and Ernest were made with the actual intent to hinder, delay, and defraud creditors. **It is true that in 1931, when the conveyances were made to Joseph, the liability on which the judgment was based had not arisen, but that is of no consequence. A conveyance made with actual intent to defraud either present or future creditors is fraudulent as to both present and future creditors....**
> Where a conveyance ... is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase.... have the conveyance set aside to the extent necessary to satisfy his claim.

*David v. Zilah, supra,* 325 Mass. at 255, 90 N.E.2d at 345 (emphasis added, citations omitted).

Thus, the Court found that the plaintiff was entitled to set aside the conveyances to the extent necessary to satisfy the indebtedness of Antone and Julia Coury arising out of the judgment. Under *David* therefore, it is clear that a plaintiff has standing to raise a fraudulent conveyance claim, even where the alleged conveyance occurred subsequent to the transactions forming the basis of the underlying claim and before the plaintiff obtains a judgment against the conveyancer.

In the case of *Themo v. Themo,* 296 Mass. 190, 5 N.E.2d 26 (1936), the defendant appealed an interlocutory decree confirming a master's report containing findings favorable to the plaintiff, and from a final decree for plaintiff. In the suit, the plaintiff sought to establish a debt due him as payee of a promissory note signed by the defendant, and to reach and apply stock of the defendant corporation standing in the name of the wife of the defendant. The note was dated January 3, 1933. The defendant contended that the plaintiff's possession of the note was in violation of the terms of an escrow agreement under which an attorney was to hold the note until such time as the parties had an accounting together to determine the amount due to the plaintiff. The master, however, found that the note was to be held "until Pandel Themo should have an opportunity and chance to meet and confer with Theodore Themo for the purpose of an accounting" and that nothing was done about conferring or meeting with the plaintiff until November 1935. The plaintiff ultimately took possession of the note, and instituted suit against the defendant. In affirming the interlocutory and final decrees for plaintiff, the Supreme Judicial Court held:

> The master finds that a transfer of the stock made by Pandel Themo to his wife on December 5, 1934, was without consideration and was made with actual intent to defraud his creditors. It is immaterial wither [sic] the plaintiff was a creditor [sic] **at the time of the transfer or became such later** upon the final delivery of the note in suit. A conveyance made with actual intent to defraud either present or future creditors is fraudulent as to both present and future creditors.

*Themo v. Themo, supra,* 296 Mass. at 191–92, 5 N.E.2d at 27. (emphasis added, citations omitted).

■ Thus, even if a person is not a "creditor" at the time of a transfer of property, if it can be shown, as it was in both the *David* and *Themo* cases, that transfers were made with intent to defraud future creditors, i.e., persons who, although creditors at the time of suit, were not creditors at the time of the transfers, the transfers may be set aside under the statute.

However, in both the *David* and *Themo* cases, the defendant became a "creditor" as a result of failure to pay back loans which had been made or notes which had been given. In the case of *Commissioner of Banks v. Walker,* 299 Mass. 123, 12 N.E.2d 103 (1938), the Court held that one who is liable to another for tortious conduct can be a "creditor" within the meaning of the statute. In that case, a director of a bank was found to have been negligent in approving certain loans prior to 1929. In 1929, he transferred certain of his assets to relatives. His liability for his negligent acts was established in 1935 in the amount of $542,724.62. The Court held that:

> The plaintiff seeks to set aside the transfer in question under the provisions of G.L. (Ter.Ed.) c. 109A. Unquestionably the plaintiff was a "creditor" of the defendant within the meaning of section 1, viz: "'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." *Cunningham v. Commissioner of Banks,* 249 Mass. 401, 429, 144 N.E. 447; *Prudential Trust Co. v. McCarter,* 271 Mass. 132, 138, 171 N.E. 42; *Medford Trust Co. v. McKnight,* [292] Mass. [1], 197 N.E. 649.

*Id.,* 299 Mass. at 126, 12 N.E.2d at 105.[4] It follows that one who is alleged to have committed a tort against another is a "creditor" of the victim of the tortious activity.

After the date on which the tortious activity is alleged to have occurred to the date a judgment is rendered in favor of the victim, the victim is a "future creditor," and any transfers made with "actual intent" to defraud the victim may be set aside as fraudulent conveyances under the statute.

Although I acknowledge that I can find no Massachusetts case in which a conveyance has been determined to be fraudulent under § 7 and set aside pursuant to § 9 on the basis that the conveyance, made after the alleged tortious activity but before judgment in favor of the victim, was effected with actual intent to defraud the victim, other states which have adopted the uniform fraudulent conveyance act have uniformly so held. *See e.g. Marcus v. Kane,* 18 F.2d 722, 723 (2 Cir.1927); *In re Elliott,* 83 F.Supp. 771, 773 (E.D.Pa.1948); *Reen v. Berton,* 115 N.H. 424, 437, 342 A.2d 650, 652 (1975); *Gatto v. Boyd,* 137 Misc. 156, 241 N.Y.S. 626, 628 (1930); *In the Matter of the Estate of Blanco,* 86 Cal. App.3d 826, 830–1, 150 Cal.Rptr. 645, 647–8 (1978).

Accordingly, I rule that at the time of each of the conveyances, the plaintiff was a "creditor" of the defendant as that term is used in M.G.L.A. Chapter 109A, and if the transfers were made with "actual intent" to "defraud" "creditors," the conveyances may be set aside pursuant to M.G.L.A. Chapter 109A, § 9. Thus, I RECOMMEND that the Motion to Withdraw or Modify Lis Pendens, Attachments and Preliminary Injunction (# 161), to the extent that the motion seeks withdrawal and/or modification on the ground that, as a matter of law, the plaintiff is not a "creditor" of the defendant as that term is used in M.G.L.A. Chapter 109A, § 1, be DENIED.

The preliminary injunction was issued upon a finding by the District Judge to whom this case is assigned that the plaintiff had shown a likelihood of success on her claims that the transfers were fraudulent convey-

---

4. The Court went on to hold that the defendant owed the plaintiff a "debt" as that term is defined in M.G.L.A. Chapter 109A, § 1. However, the Court did not find that the transfers were fraudulent. The plaintiff was proceeding under § 4 of Chapter 109A alleging that the transfers rendered the defendant "insolvent." The Court found that the transfers in 1929 did not render the defendant insolvent. Plaintiff in that case did not seek to have the transfers set aside pursuant to Chapter 109A, § 7 (as the plaintiff in the instant case does) on the ground that they were made with "actual intent to hinder, delay or defraud either present or future creditors."

ances. The defendant and the intervenor are entitled to require that the plaintiff prove the claim that the transfers were fraudulent conveyances. Therefore, I FURTHER RECOMMEND that the District Judge to whom this case is assigned set the plaintiff's fraudulent conveyance claims for an evidentiary hearing as soon as practicable. The file is RETURNED to the Clerk's Office.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir.1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

December 16, 1993.