In re Camille NETO, Debtor.

Bankruptcy No. 97–35208.

United States Bankruptcy Court,
D. New Jersey.

Nov. 24, 1997.

Teich, Groh and Frost, Trenton, NJ, for Trustee.

Blankenhorn & Ragan, Asbury Park, NJ, for Creditor.

Lawrence, Leslie & Kain, Asbury Park, NJ, for Debtor.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL HISTORY

This matter comes before the court by way of a motion by a creditor, Paul Wisniewski, objecting to debtor's exemption of lottery proceeds from property of the estate and seeking a determination that the lottery proceeds are property of the estate and not exempt.

On May 29, 1997, the debtor, Camille Neto, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* On June 16, 1997, Mr. Wisniewski filed a notice of motion objecting to the debtor's exemption of the lottery proceeds pursuant to 11 U.S.C. § 522(d)(10)(E). This court heard the matter on July 21, 1997 and reserved decision. At the hearing the trustee appeared and supported the creditor's motion. The court permitted the parties to file supplemental briefs. Both debtor and Mr. Wisniewski filed post-trial briefs.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference by the United States District Court for the District of New Jersey, dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

### FACTS

In March of 1996 the debtor won the New Jersey "Win for Life Instant Lottery Game." The debtor was thereby entitled to a prize of $1,000 a week for life with a guaranteed minimum payment of $1,000,000. In order to fund the prize money, the State of New Jersey purchased an annuity from Keyport Insurance Company. While the State of New Jersey is the owner of the annuity, the debtor is named as the beneficiary.

The debtor was part-owner and manager of 337–339 Cookman Avenue, Inc., a New Jersey corporation (the "corporation"). The corporation owned a liquor license and operated a bar and packaged goods business. Unable to meet its debts, the corporation filed for relief under chapter 11 in February of 1996. In December of 1996, the corporate case was converted to one under chapter 7, and the assets are in the process of being liquidated.

In order to purchase the bar and packaged goods business, the individual debtor, along with two others, signed a personal guarantee, guaranteeing to Paul Wisniewski, the seller and mortgagee, payment of the debt of the corporation. After the corporation defaulted on payment of the debt, Mr. Wisniewski (henceforth the "creditor"), commenced an action to recover under the guarantee. In response to the creditor's action, the debtor herein filed for chapter 7 relief. Mr. Wisniewski filed a proof of claim in this case on June 16, 1997 asserting a balance due on his claim of $455,808.68.

### DISCUSSION

The issue before the court is whether or not the debtor's right to receive future lottery payments constitutes property of the estate pursuant to 11 U.S.C. § 541, or whether, as the debtor claims, it may be claimed as exempt pursuant to the federal exemptions provided under 11 U.S.C. § 522. The debtor's argument is twofold. First, she asserts that her interest in the future lottery proceeds is not property of the estate, and that the proceeds are excludable pursuant to 11 U.S.C. § 543(C)(2) as they derive from a trust with sufficient restrictions on transfer under New Jersey state law. Debtor also contends that she has no ownership interest in the annuity contract and, therefore, the contract is not property of the estate. Debtor argues in the alternative that if the winnings are estate property, they are exempt from the estate pursuant to § 522(d)(10)(E) because they are an annuity. The trustee and Mr. Wisniewski counter that debtor's right to future lottery payments is not excluded from estate property. They assert

that it is not from a qualifying trust under state law because the trust lacks the requisite restriction on transfer and is not qualified under the Internal Revenue Code. Second, the proceeds are not exempt under 11 U.S.C. § 522(d)(10)(E) because they do not originate from an annuity which is on account of illness, disability, death, age, or length of service.

### Property of the Estate

■ In addressing the issue of lottery proceeds, the courts have consistently held that the future right to receive lottery payments constitutes property of the estate pursuant to 11 U.S.C. § 541. *See In re Miller*, 16 B.R. 790, 791 (Bankr.D.Md.1982) ("[d]ebtor's interest, albeit in some respects a future interest, in the lottery winnings became property of the estate upon the filing of his petition for relief"); *In re Meyers*, 139 B.R. 858, 860 (Bankr.N.D.Ohio 1992) ("future lottery proceeds are property of the estate as the debtor had a right to receive proceeds as of the commencement of that case."); *Matter of Brown*, 82 B.R. 967, 968 (Bankr.N.D.Ind. 1988) ("lottery winnings are unlike future wages ... because the debtor has a present contractual right to receive future lottery payments, whereas he must earn future wages"); *In re Dalton*, 146 B.R. 460, 462 (Bankr.D.Ariz.1992) ("all the debtors' interests in the winning ticket are estate property").

11 U.S.C. § 541 reads in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such an estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

It is clear from a reading of the statute that Congress intended § 541 to be all encompassing. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–04, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983). In *Whiting Pools*, the Supreme Court made clear that "[a]lthough [the relevant] statutes could be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, we view them as a definition of what is included in the estate, rather than as a limitation ... Congress intended a broad range of property to be included in the estate." *Id. See also In re Miller*, 16 B.R. 790, 791 (Bankr.D.Md. 1982) ("The scope of § 541(a) is broad and all embracing.").

Debtor argues that she has no ownership interest in the annuity contract sufficient to justify a finding that the *debtor's ownership interest in the annuity contract* is property of the estate. Debtor asserts that the annuity contract indicates that the debtor is the beneficiary, but that the State of New Jersey is the owner of the contract. Debtor's argument is misplaced. Debtor has framed the question as if the creditor sought to have the *annuity contract* itself, rather than the lottery proceeds, included as property of the estate.

As the court has articulated above, the issue is whether the debtor's *right to the lottery proceeds*, is property of the estate. Indeed, the debtor concedes in her post-trial brief that "[debtor's] only right is that to receive the current income paid by the annuity. As the Trustee can acquire no rights greater than the debtor, said contract is not includable as part of her estimate [sic] upon the commencement of her case." (Debtor's post-trial brief, p. 2). Moreover, the issue here is whether the *lottery proceeds* are included as property of the estate. Clearly debtor has rights to those proceeds.

Further, the court disagrees that the debtor has no interest in the annuity contract sufficient to bring it within the scope of the broad range of interests that are included in estate property under *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–04, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983), and 11 U.S.C. § 541. Debtor urges this court to hold that the proceeds are not estate property because a debtor may not assign lottery proceeds to satisfy business related debts under *McCabe v. Director of New Jersey Lottery Commission*, 143 N.J.Super. 443, 363 A.2d 387 (Ch.Div.1976). Debtor argues

that such a restriction on a debtor's assignment somehow divests a debtor of its interest in the contract as a beneficiary.

In the first place, a debtor, as a beneficiary, does have very broad and well-established rights in the annuity contract sufficient to bring it within the scope of 11 U.S.C. § 541. This debtor, as a lottery winner, has the right to receive proceeds as specified in the annuity contract. In addition, a winner may petition the Superior Court of New Jersey to convert the periodic payments into a lump sum on account of medical or other similar necessity (*Affidavit of William Jourdain*). Furthermore, and of particular relevance to the instant case, creditors may petition the court for an assignment of winner's interest pursuant to N.J.S.A. 17B:24–7. *See infra* pp. 942–43. This evidences an interest by the debtor (as well as creditors of the debtor) in the lottery contract.

### *Restrictions on Transfer/Exclusion from Property of the Estate*

■ While the definition of property of the estate is broad and all-encompassing, the bankruptcy code does exclude certain enumerated items. Pursuant to 11 U.S.C. § 542(c)(2) property of the estate does not include, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ..." 11 U.S.C. § 541(c)(2).

The debtor argues that under N.J.S.A. 5:9–13, N.J.S.A. 17B:24–7 and N.J.S.A. 25:2–1 of the New Jersey Statutes Annotated and under the rules established by the Lottery Commission, she is restricted in the transfer of her right to the payments. As a result, the debtor asserts, the proceeds should be excluded from the estate pursuant to § 541(c)(2). The debtor and the trustee disagree as to whether there is in fact such a restriction on the transfer of lottery proceeds under New Jersey state law.

In determining whether there exists a restriction of transfer under state law N.J.S.A. 5:9–13 provides in pertinent part:

[N]o right of any person to a prize drawn shall be assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and *except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled.* The director shall be discharged of all further liability upon payment of a prize pursuant to this section.

N.J.S.A. 5:9–13 (emphasis added).

Debtor argues that the wording of the statute creates a restriction on transfer. It is true that the lottery proceeds may not be freely assignable or reachable by the winner herself. It is clear from a reading of the statute, however, that where there has been an appropriate judicial order, the lottery proceeds may indeed be both assignable and reachable by creditors.

The debtor further looks to N.J.S.A. 17B:24–7 which provides in pertinent part:

17B:24–7. Exemption of proceeds—annuity contracts

a. The benefits, rights, privileges, powers and options which under any annuity contract heretofore or hereafter issued are due or prospectively due the annuitant, shall not be subject to execution, garnishment, attachment, sequestration or other legal process nor shall the annuitant be compelled to exercise any such rights, privileges, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract, except:

\*      \*      \*

(2) The total exemption of benefits presently due and payable to any annuitant periodically or at stated times under all *annuity contracts* under which he is an annuitant, shall not at any time exceed $500.00 per month for the length of time represented by such installments, and such *periodic payments in excess of $500.00 per month shall be subject to garnishee execution to the same extent as are wages and salaries.*

(3) If the total benefits presently due and payable to any annuitant under all annuity contracts under which he is an annuitant, shall at any time exceed payment at the rate of $500.00 per month, then the court may order such annuitant to pay to a judgment creditor or apply on the

judgment, in installments, such portion of such excess benefits as to the court may appear just and proper, after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him as well as any prior court orders.

b. If the contract so provides, the benefits, rights, privileges, powers or options accruing under such contract to a beneficiary or assignee shall not be transferable nor subject to commutation, and if the benefits are payable periodically or at stated times, the same exemptions and exceptions contained herein for the annuitant, shall apply with respect to such beneficiary or assignee.

N.J.S.A. 17B:24–7 (emphasis added). While this court acknowledges that N.J.S.A. 5:9–13 and N.J.S.A. 17B:24–7 do provide some impediment for creditors to attach or garnish future rights to payment under annuity contracts, it is apparent from the list of exceptions provided that any such restrictions on transfer and/or attachment are far from absolute and are less cumbersome than the debtor would have the court believe. In fact N.J.S.A. 17B:24–7, by the use of the term "shall be subject to garnishee execution," appears to create a clear right in a judgment creditor to reach annuity proceeds in excess of $500 per month. The lottery proceeds in this case amount to $1,000 per week, and thus seem to be reachable under New Jersey Law, upon proper application to the court.[1]

The last statute cited to by the debtor is N.J.S.A. 25:2–1 which states in pertinent part:

25:2–1. Conveyances of personal property in trust for use of persons making them void as to creditors

a. Except as provided in subsection b. of this section, every deed of gift and every conveyance, transfer and assignment of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against creditors.

b. Notwithstanding the provisions of any other law to the contrary, *any property held in a qualifying trust and any distributions from a qualifying trust,* regardless of the distribution plan elected for the qualifying trust, shall be exempt from all claims of creditors and shall be excluded from an estate in bankruptcy,

\*   \*   \*

For purposes of this section, a "qualifying trust" means a trust *created or qualified and maintained pursuant to federal law, including, but not limited to, section 401, 403, 408, or section 409 of the federal Internal Revenue Code of 1986* (26 U.S.C. § 401, 403, 408 or 409).

N.J.S.A. 25:2–1 (emphasis added).

The issue this court must address in construing the statute is whether or not the lottery proceeds, which are paid to the debtor from an annuity purchased for the debtor, are property held or distributed from a "qualifying trust." *Orr v. Yuhas (In re Yuhas),* 104 F.3d 612 (3d Cir.1997). *Yuhas* dealt with whether an Individual Retirement Account ("I.R.A.") is a qualifying trust under N.J.S.A. 25:2–1 and restricted for the purposes of exclusion from the estate pursuant to 11 U.S.C. § 541(c)(2). *Id.* at 613. Finding the I.R.A. to be both a qualifying trust and restricted for the purposes of exclusion, the court established a list of five factors that must be met before a trust can be excluded from the estate. *Id.* at 614. The factors listed by the Third Circuit are as follows:

(1) the [trust] must constitute a "trust" within the meaning of 11 U.S.C. § 541(c)(2);[2]

---

**1.** This court takes no position as to whether such an application would be granted by the Superior Court of the State of New Jersey.

**2.** The majority of lottery cases which have addressed what qualifies as a trust for the purposes of § 541(c)(2) have found that § 541(c)(2) applies only to spendthrift trust. *See In re Miller,* 16 B.R. 790, 791 (Bankr.D.Md.1982) ("Congress intended § 541(c)(2) to 'preserve restrictions on transfer of a spendthrift trust.'"); *In re Miller* at

791 (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787). The Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) effectively eliminated this narrow analysis and has interpreted § 541(c)(2) to include more than just spendthrift trust.

(2) the funds in the [trust] must represent the debtor's "beneficial interest" in that trust;

(3) the [trust] must be qualified under Section[s] [401, 403,] 408, [or 409] of the Internal Revenue Code;

(4) the provision of *N.J.S.A. § 25:2–1* stating that property held in a qualifying [trust] is "exempt from all claims of creditors" must be a "restriction on the transfer" of [trust] funds;

(5) this restriction must be "enforceable under nonbankruptcy law."

*In re Yuhas,* 104 F.3d 612, 614 (3d Cir.1997). All five factors must be met or the trust is not excludable under 11 U.S.C. 541(c)(2). If it can be shown that any one of the factors is missing, then the property is included as property of the estate. *Id.*

Factors number three (qualified trust under Internal Revenue Code) and four (restriction on transfer of funds) listed above are dispositive of the instant case. As to factor number three, debtor has not offered a scintilla of evidence that the lottery annuity is a trust qualified under §§ 401, 403, 408, or 409 of the Internal Revenue Code. In its brief, debtor made the bald assertion that, "[a]lthough not discussed during preliminary argument, the debtor urges the within position is further supported by the applicable sections of 26 U.S.C. § 408 as it applies to the debtor's right to receive this annuity."

*(Debtor's Post-trial brief* at p. 7). After a thorough reading of section 408 of the Internal Revenue Code, this court is convinced that the annuity purchased on behalf of the debtor is not qualified under that section.[3] Aside from the fact that the annuity was established as a prize for winning the lottery and not as a retirement investment, it does not appear to be the type of "retirement account" described in 26 U.S.C. § 408(a) or "retirement annuity" described in 26 U.S.C. § 408(b). As noted by the Third Circuit in *Yuhas:*

> [T]here can be no doubt that Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs. We believe it reasonable to conclude that Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, unless vulnerable to challenge as fraudulent conveyances or voidable preferences.

104 F.3d 612, 615 (quoting *Velis v. Kardanis,* 949 F.2d 78, 82 (3d Cir.1991)). The policy issues concerning retirement that are present in the case of an I.R.A. simply are not raised in the situation of lottery winnings. Furthermore, the distributions of $1,000 of proceeds weekly to debtor appear to disqualify the annuity from being qualified under 26 U.S.C. § 408(e).[4]

3. 26 U.S.C. § 408(a) defines an "individual retirement account" as "a trust" that is "created or organized in the United States for the exclusive benefit of an individual or his beneficiaries" and that meets certain requirements. *See* 26 U.S.C. § 408(a)(1) ("[N]o contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000 on behalf of any individual."). *See also* 26 U.S.C. § 408(b) (the term 'individual retirement annuity' means an annuity contract, or endowment contract ... which meets certain requirements.) I.R.A.s that meet these requirements are said to be "qualified" and receive favorable federal income tax treatment. *See* Section 408(d) and (e) of the Internal Revenue Code. 26 U.S.C. §§ 408(d) and (e).

4. 26 U.S.C. § 408(e) holds in pertinent part:

(1) Exemption from tax.—Any individual retirement account is exempt from taxation under this subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3).

\* \* \*

(2) Loss of exemption of account where employee engages in prohibited transaction.— (A) In general.—If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year.

\* \* \*

(3) Effect of borrowing on annuity contract.— If during any taxable year the owner of an individual retirement annuity borrows any money under or by use of such contract, the contract ceases to be an individual retirement annuity as of the first day of such taxable year. Such owner shall include in gross income for such year an amount equal to the fair market value of such contract as of such first day.

Requirement number 4 under *Yuhas*, 104 F.3d 612, is not met because the lottery annuity does not contain a restriction on the transfer of funds that is enforceable under applicable nonbankruptcy law. As discussed above, pursuant to N.J.S.A. 5:9–13 and 17B:24–7, the lottery proceeds are not restricted from transfer. Rather they are reachable by creditors of the lottery winner. This point was further supported by Mr. William Jourdain, the Comptroller of the New Jersey Lottery, in his Certification describing the manner in which creditors may reach lottery proceeds. Mr. Jourdain stated that while the winners do not have a lump sum option, they may petition the Superior Court for assignment of the lottery income stream to a financing company. Should the court allow for such assignment, the State would pay the income stream from the insurance policy directly to the financing company and the financing company then would pay the winner in exchange for the assignment. Mr. Jourdain also observed in his certification that where a judgment creditor has caused a sheriff to levy on an income stream, the stream is temporarily diverted from the winner to the creditor, and then back to the winner after the judgment amount is satisfied.

Thus two of the five requirements set forth in *Orr v. Yuhas*, 104 F.3d 612, 614 (3d Cir. 1997) are not met in this case. The lottery annuity does not satisfy the criteria for qualification under N.J.S.A. 25:2–1. Therefore, the property does not contain a restriction on transfer enforceable under nonbankruptcy

law, and is not excluded under 11 U.S.C. § 541(c)(2). The proceeds are property of the estate.

### Exemption from Estate

■ The debtor argues in the alternative that should the lottery proceeds be considered property of the estate under 11 U.S.C. § 541, they would still be exempted under the federal exemptions. While the interest of the debtor may fall within property of the estate under § 541, the debtor retains the right to claim certain property as exempt under either the federal exemptions provided in 11 U.S.C. §§ 522(b)(1) and (d) or under the state exemptions pursuant to § 522(b)(2).[5] In choosing the federal exemptions, the debtor argues that the lottery payments are exempt pursuant to § 522(d)(10)(E).[6]

§ 522 provides in pertinent part:

(d) The *following property may be exempted under subsection* (b)(1) of this section:

(10) The debtor's right to receive—

(E)· a payment under a stock bonus, pension, profitsharing, *annuity*, or similar plan or contract *on account of illness, disability, death, age, or length of service*, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. ·

§ 522(d)(10)(E) (emphasis added).

The debtor argues that since the payments are from an annuity purchased by the State of New Jersey, in the name of the debtor,

5. The debtor may elect state exemptions as long as the state of the debtor's residence has not opted out. *See* 11 U.S.C. 522(b); *In re Yuhas*, 104 F.3d 612, 613 (3d Cir.1997). A debtor may not chose both federal and state exemptions. *In re Yuhas*, 104 F.3d at 613.

6. In the event that the debtor had chosen the state exemptions, the lottery proceeds still would not be exempt. The New Jersey state exemption statutes do not exempt lottery proceeds. In New Jersey, "all property of a judgment debtor is subject to levy to satisfy a judgment" unless expressly exempted by federal or state statute. *In re Lamb*, 179 B.R. 419, 425 (Bankr.D.N.J. 1994) (citing *Halliburton Co. v. Mor*, 231 N.J.Super. 197, 199, 555 A.2d 55 (Law Div.1988)), *disapproved with on other grounds by, In re Yuhas*, 104 F.3d 612.

The New Jersey exemption statutes are Section 2A:17–19 of the New Jersey Statutes Annotated (which exempts goods and chattels and other personal property amounting to $1,000 or less); N.J.S.A. 43:7–13 (state prison officer pensions); N.J.S.A. 43:10–18.22, 18.71 (county pension funds); N.J.S.A. 43:10–57 (probation officers' pensions); N.J.S.A. 43:13–9 (city pension fund); N.J.S.A. 43:18–12 (city board of health pension fund); N.J.S.A. 43:19–17 (street and water department employees' pensions); and N.J.S.A. 53:5A–45 (state police pensions). *See In re Lamb*, 179 B.R. at 425. Those sections are specific to certain types of governmental pensions and do not apply here. In addition, as addressed above, N.J.S.A. 25:2–1 (certain trusts) does not apply to a lottery annuity. *See infra* pp. 943–944.

such payments should be exempt. The plain language of the statute, however, exempts the debtor's right to receive a payment under an "annuity or other similar plan or contract on account of illness, disability, death, age or length of service." 11 U.S.C. § 522(d)(10)(E). The issue is whether the annuity must be on account of the factors listed or whether the phrase "on account of illness, disability, death, age or length of service" only modifies "similar plan or contract." Both of the reported cases dealing with this issue have held that the annuity must be "on account of illness, disability, death, age or length of service" to qualify for exemption under 11 U.S.C. § 522(d)(10)(E). See In re Miller, 16 B.R. 790, 791 (Bankr. D.Md.1982) ("The code expressly provides that the only form of annuity contract subject to exemption is one on account of illness, disability death, age or length of service."); In re Skog, 144 B.R. 221, 222 (Bankr.D.R.I. 1992) (same). This court agrees with those cases and can conceive of no sound reason why the code would single out "or similar plan or contract" for the requirement that the payments be "on account of illness, disability, death, age or length of service." The fact that the code uses the word "similar" indicates that all of the types of plans would be treated similarly.

Further support for this interpretation can be found in Matter of Carmichael, 100 F.3d 375, 378 (5th Cir.1996) where the Court of Appeals for the Fifth Circuit found that "the four types of plans or contracts that are listed by name in paragraph (d)(10)(E) as per se exempt are substitutes for future earnings." Id. In this case the debtor's right to receive future payments under the lottery annuity is not triggered by any of the events set forth in § 522(d)(10)(E). The debtor has pointed to no contractual provision, nor has this court found any authority standing for the proposition that lottery proceeds are intended to be substitutes for future earnings. See Matter of Brown, 82 B.R. 967, 968 (Bankr.N.D.Ind.1988) ("lottery winnings are unlike future wages ... because the debtor has a present contractual right to receive future lottery payments, whereas he must earn future wages").

The debtor contends that she does not intend to work again and that at her age, she will have a difficult time obtaining reasonable employment. She concludes that the annuity payments, therefore, are intended to be a substitute for future earnings and, as well on account of age. Judge Votolato in In re Skog, 144 B.R. 221 (Bankr.D.R.I.1992) points out that such reasoning "put[s] the cart before the horse in concluding that [the debtor's] infirmities transform an otherwise unrestricted contractual right (to receive the annual lottery payment) into one based upon 'illness, disability, death, age or length of service.'" Id. The debtor's right to receive payments is not conditioned on any of the factors listed and while the State has purchased a legitimate annuity in the name of the debtor, it is not of the type provided under § 522(d)(10)(E) and is therefore not exempt.

Finally, from an equitable point of view, this court agrees with the court's observation in Matter of Brown, 86 B.R. 944, 947 (N.D.Ind.1988), that:

> [D]ebtors' position ... boggles the mind from a policy perspective and certainly offends the spirit of bankruptcy law. These debtors would wish to enjoy their windfall uninhibited by previously established debts.... With the monthly income that they can rely on enjoying for the next decade and beyond, free of the usual consumption of energy and investiture of time, it is understandable that the trustee has asserted that "it would be inequitable to allow a millionaire to discharge $80,000 of debt."

Id.

## CONCLUSION

For all of the above reasons, this court finds that the lottery proceeds are property of the estate pursuant to 11 U.S.C. § 541 and are not exempt under 11 U.S.C. § 522(d)(10)(E). Counsel for the movant shall submit an order consistent with this opinion within ten days.