In re Durward E. KOONCE and Theresa Nguyen Koonce, Debtors.

Durward E. Koonce and Theresa Koonce, Plaintiffs,

v.

Kathleen McDonald, Chapter 13 Trustee, Involuntary Plaintiff,

v.

Woodbridge Sterling Capital L.L.C., First Financial Trust, N.A., as Trustee of the Koonce Trust, the Koonce Trust, and Western United Life Assurance, Co., Defendants.

Bankruptcy No. BK–S–97–26921–LBR. Adversary No. S–982253.

United States Bankruptcy Court, D. Nevada.

March 15, 2001.

Philip Palmer, Jr., Dallas, TX, for plaintiffs.

Terry Leavitt, Graves & Leavitt, Las Vegas, NV, for Woodbridge Sterling.

Joshua M. Landish, Las Vegas, NV, for Western United Life Assurance Company.

Kathleen McDonald, Chapter 13 Trustee.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

LINDA B. RIEGLE, Bankruptcy Judge.

The Plaintiff/Debtors Durward and Theresa Koonce filed a second amended adversary complaint against Woodbridge Sterling Capital, L.L.C. ("Woodbridge Sterling"); First Financial Trust, N.A. ("First Financial") as Trustee of the Koonce Trust; the Koonce Trust; and Western United Life Assurance Co. ("Western United"). Phillip Palmer, Jr., Esq. appeared on behalf of Plaintiffs Durward and Theresa Koonce. Joshua M. Landish, Esq. appeared on behalf of Western United, and Terry Leavitt, Esq. appeared on behalf of Woodbridge Sterling. The Chapter 13 Trustee is listed on the caption of the second amended adversary complaint as an "involuntary plaintiff."[2] The Court has jurisdiction of this core

---

1. On August 24, 1999, an "Order Amending Case Style" was entered substituting "Woodbridge Sterling Capital, L.L.C." for "Woodbridge Financial Corp." The "Findings of Fact and Conclusions of Law" entered on March 6, 2001 are hereby amended to reflect that substitution, and these "Amended Findings" differ from the original "Findings" only in that regard.

2. On January 20, 1999 Woodbridge Financial brought a Motion to Dismiss on the stated grounds that the Chapter 13 Trustee could not appear as an "involuntary plaintiff." The matter was heard on February 18, 1999 and was denied, although no written order was entered.

proceeding pursuant to 28 U.S.C. §§ 1334(b) and (e) and §§ 157(a) and 157(b)(2).

The parties filed a "Joint Pre–Trial Order" prior to trial in which they stipulated to certain facts. After the trial of this matter and at the invitation of the Court, the Koonces and Western United filed post-trial briefs on the issues of law. The Court has considered the pleadings, testimony, documentary evidence, arguments of counsel, the facts as stipulated in the "Joint Pretrial Order," the parties' post-trial briefs, and the law in this matter. In accordance with Fed.R.Civ.P. 52, made applicable to adversary proceedings by Fed. R.Bankr.P. 7052, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The Koonces filed a Chapter 13 petition on September 11, 1997.

2. In February, 1985, Durward Koonce ("Koonce") won the Massachusetts State "Megabucks" lottery. The winning entitled him to receive $1,307,540 over 19 years, at a rate of $65,417 per year, before state and federal income taxes.

3. At all times relevant to this proceeding, the State of Massachusetts has issued a check in the amount of $43,802, net after taxes.

4. Koonce decided to cash in the stream of payments he was entitled to receive from the lottery prize in order to pay off some debts.

5. After seeing an advertisement in the USA Today newspaper, Koonce contacted Woodbridge Financial Corp. ("Woodbridge Financial") and spoke to a customer service representative. Trial Transcript p. 5, lines 20–25; p. 6, lines 1–6; p. 25, lines 21–25.

6. Woodbridge Financial did cash flow buying and various other financial activities. Trial Transcript p. 23, lines 8–10.

7. Woodbridge Sterling was formed in 1996 to handle the cash flow business. It is in the business of buying lottery payments in various states around the country, as well as structured settlements, insurance payments and mortgages. Witness Michael Damore is general counsel for Woodbridge Sterling.

8. As a result of a merger Woodbridge Sterling is the successor to Woodbridge Financial.

9. Woodbridge Financial sent several legal documents to Koonce. The first documents were a "Loan Agreement," a "Secured Promissory Note," and a "Promissory Note." Later, Woodbridge Financial sent Koonce a second batch of documents which included a "Trust Agreement" ("Trust Agreement" or "Koonce Trust"), a letter to the Massachusetts Lottery Commission for Koonce to sign, and an "Assignment."

10. On or about September 25, 1996, Koonce executed the Loan Agreement (Plaintiff's Ex. "2") and thereby borrowed $156,000 from Woodbridge Financial. Koonce also executed the Secured Promissory Note (Plaintiff's Ex. "3") for the amount of $156,000, and a Promissory Note (Plaintiff's Ex. "4") for $10,000, representing an advance on the total payment of $156,000.

11. The loan from Woodbridge Financial was secured, and to be repaid, by a portion of Koonce's future lottery prize payments. The Loan Agreement provides that the collateral for the loan is eight annual lottery payments payable to Koonce in the years 1997 through 2004, and that Koonce shall assign the payments to an irrevocable trust for the purpose of repaying the loan.

12. The Secured Promissory Note provides that it is secured by Koonce's right to receive the lottery payments.

13. Koonce executed the letter to the Massachusetts Lottery Commission ("Koonce's Letter to the Lottery Commission") which states that he had created the Koonce Trust, appointed First Financial as the Trustee, and assigned his rights to receive the eight lottery payments from 1997 through 2004 to the Koonce Trust. The letter is dated September 27, 1996 (Plaintiff's Ex. "7").

14. On October 8, 1996, Koonce executed the Trust Agreement creating the Koonce Trust (Plaintiff's Ex. "6"). The Trust Agreement provides that Koonce has transferred and assigned his right in the eight lottery payments to First Financial as Trustee.

15. On October 8, 1996, Koonce executed the Assignment in which he assigned his right to receive the lottery prize payments to First Financial, as Trustee of the Koonce Trust. (Plaintiff's Ex. "8").

16. On or before October 18, 1996, Western United became the holder of the $156,000 Promissory Note by virtue of an assignment from Woodbridge Financial. Western United paid Woodbridge Financial a brokerage fee in the approximate amount of $8,455.

17. All payments as a result of the loan have gone to Western United, as holder of the loan.

18. On January 27, 1997, the Massachusetts Lottery Commission issued a check for $43,802 made out to the "Durward Koonce Trust" and mailed it to First Financial.

19. First Financial, on February 10, 1997, issued a check to Koonce in the amount of $12,140 and a check to Western United in the amount of $30,662. The additional $1,000 was retained by First Financial as its fee.

20. On January 27, 1998, the Massachusetts Lottery Commission issued a check for $43,802, made out to the "Durward Koonce Trust," which was received and re-distributed by First Financial Trust, as the 1997 payment.

21. On January 27, 1999, the Massachusetts Lottery Commission issued a check for $43,802, made out to the "Durward Koonce Trust," which was received and re-distributed by First Financial Trust, as the 1998 payment.

22. Pursuant to an order entered on January 27, 2000, the January, 2000 check from the Massachusetts Lottery Commission for $43,802 has been placed in the Court Registry, awaiting further order of the Court.

23. Prior to going forward with the transaction, Woodbridge submitted the Koonce Trust, Koonce's Letter to the Lottery Commission, and the Assignment to the Massachusetts Lottery Commission for approval.

24. None of these documents disclose the true intent of the transaction. For example, the Trust Agreement does not name a beneficiary or disclose to whom the lottery prize payments are to be made, other than distributions shall be made in accordance with the settlor's instructions. Instead, it states that Koonce is the settlor of the Koonce Trust, and that as settlor his right to assign his beneficial interest under the Trust "shall be governed by Massachusetts General Laws Chapter 10, Section 28."

25. The documents associated with the underlying business transaction, the "Loan Agreement" and the "Secured Promissory Note," were not submitted to the Lottery Commission as part of the approval process.

26. The Associate General Counsel for the Massachusetts State Lottery Commission, John W. Harney, sent a letter ("Approval Letter From Lottery Commission") (Defendant's Ex. "B") addressed to Mr. Damore at Woodbridge Financial dated October 10, 1996, which stated the following, in pertinent part:

I have this day approved the assignment and trust documents, and have informed the Finance Department that all future payments due the above entitled prize winner shall be made to the Koonce Trust. Taxes will continue to be withheld under Mr. Koonce's social security number until a Federal Tax ID Number is provided for the trust. Future payments will be mailed to the Trustee, at the following address: First Financial Trust, N.A.....

27. Koonce brought a "Second Amended" adversary complaint against Woodbridge Sterling, First Financial, the Koonce Trust, and Western United alleging, among other things, that Massachusetts law prohibits the assignment of the lottery proceeds. The complaint states causes of action for the following: illusory trust; illegal transaction and estoppel; fraudulent transfers under 11 U.S.C. § 548; avoidable post-petition transfers under § 549; a declaration that the lottery award may be sold or collected by the Chapter 13 trustee free of all liens, claims, encumbrances and taxes; an accounting; conspiracy among Woodbridge, Western United and First Financial to illegally evade the Massachusetts law prohibiting assignment of lottery proceeds entitling the Koonces to actual, consequential and punitive damages; equitable subordination under § 510(b); and for attorneys' fees.

28. In their prayer for relief, the Koonces ask that the Koonce Trust be declared void; that Defendants Woodbridge Sterling, Western United, and First Financial "account" for all sums which they have received from the Massachusetts Lottery on behalf of Koonce; that the Chapter 13 Trustee be authorized to sell or hold the remaining lottery payments free and clear of all liens, claims, encumbrances and taxes; for a judgment against Woodbridge Sterling, Western United, and First Financial in the amount of $306,614 plus punitive damages and pre-judgment interest; a judgment that any claims of defendants be subordinated to the claims of other creditors; that the Defendants be declared unsecured creditors (if creditors at all); and attorneys' fees.

29. The Loan Agreement, the Secured Promissory Note, and the Koonce Trust each provide that they are to be governed in accordance with the laws of Massachusetts.

30. To the extent that the foregoing findings of fact should be considered to be conclusions of law, they should be construed as such.

## Conclusions of Law

For the reasons stated below, this Court concludes that the assignment of the lottery prize payments violates Massachusetts state lottery law and is thus void. Accordingly, the Loan Agreement is not secured by the purported assignment of the lottery prize winnings. In addition, the lottery payments received by Western United after the petition was filed should be avoided pursuant to 11 U.S.C. § 549 as post-petition transfers.

As a preliminary matter, the Court concludes that the lottery prize payments payable after the petition was filed constitute property of the estate under 11 U.S.C. § 541(a)(1), as Koonce had a right to receive the payments as of the commencement of the case. *See In re Koonce,* 54 B.R. 643, 645 (Bankr.D.S.C.1985) (post-petition lottery winnings constituted proper-

ty of the estate and were includable in Chapter 13 plan); *In re Neto,* 215 B.R. 939, 941 (Bankr.D.N.J.1997) ("courts have consistently held that the future right to receive lottery payments constitutes property of the estate pursuant to 11 U.S.C. § 541").

*Assignment of Lottery Prize is Prohibited Under Massachusetts Law*

■ Massachusetts law prohibits the assignment of a lottery prize payment, except under specific circumstances. One of the limited circumstances is an assignment to a trust of which the beneficiary is the prize winner or his immediate family. MASS.GEN.LAWS ch. 10, § 28 (West 1996)[3] provides the following:

Assignability of prizes; liability of commissioner and director

*No right of any person to a prize shall be assignable, except* that payment of any prize may be made to the estate of a deceased prize winner or to the IV–D agency as set forth in chapter one hundred and nineteen A, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled, and except that the commission may, by regulations adopted pursuant to section twenty-four, permit assignment of prizes for purposes of paying estate and inheritance taxes, or *to a trust the beneficiaries of which are the prize winner, his mother, father, children, grandchildren, brothers, sisters, or spouse.* Neither the commission nor the director shall be liable for the payment of a prize pursuant to this section.

(Emphasis added). The relevant regulation MASS.REGS.CODE title 961, § 2.28

(2000), also provides that the beneficiaries of a trust are restricted to the prize winner and his family.

In its post-trial brief Western United argues that the assignment of the lottery prize payments does not violate Massachusetts lottery law (§ 28 of Chapter 10) because the Koonces are themselves beneficiaries of the trust.

■ To the contrary, not only does the Trust Agreement fail to make the Koonces the beneficiaries of the Koonce Trust, but moreover an examination of the Loan Agreement, the Secured Promissory Note, and the Koonce Trust shows that their combined effect results in making Woodbridge Financial, in reality, the beneficiary of the trust. The assignment thus violates Massachusetts state lottery law.

*Loan Agreement*

The Loan Agreement at ¶ 5 requires that Koonce assign his interest in the lottery payment to an irrevocable trust for the purpose of repaying the loan. Paragraph 5 of the Loan Agreement provides, in pertinent part.

Borrower agrees to execute that certain Declaration of Trust Agreement attached hereto as Exhibit "A" whereby Borrower assigns the right, title and interest to the entire Lottery Payment payable in the years 1997–2004 to an Irrevocable Trust for the purpose of repaying the Loan Agreement pursuant to this Agreement. Borrower further agrees to execute any additional documents and take any further actions necessary to cause the Massachusetts State Lottery to pay the Assigned Payment directly to the trust.

---

**3.** This section was last amended in 1994 when the following sentence was inserted: "or to the IV–D agency as set forth in chapter one hundred and nineteen A." An "IV–D

agency" refers to Title IV, Part D of the Social Security Act, which in turn deals with child support enforcement activities.

### Trust Agreement

The Koonce Trust gives Koonce, as settlor, the power to instruct the Trustee to deliver trust assets to any party, other than to him. The Koonce Trust, while it does not name a beneficiary, states that the Trustee shall distribute the assets of the trust "in accordance with any instructions, irrevocable or otherwise, Settlor delivers to Trustee during the existence of this Trust." The Koonce Trust terminates ninety days after the final payment of the assigned lottery payments.

### Secured Promissory Note

An examination of the Secured Promissory Note at page one shows that it is secured by Koonce's "assignment of the Koonce Irrevocable Trust of [his] right to receive certain lottery payments in accordance with the terms of the Loan Agreement and the Declaration of Irrevocable Trust executed herewith."

Accordingly, the effect of the instruments is to assign the lottery prize to Woodbridge Financial, not Koonce. The assignment thus violates § 28 of the Massachusetts state lottery law and is invalid and unenforceable. Accordingly, the loan is not secured and the Secured Promissory Note does not support a lien. *See, e.g.; Midland States Life Ins. Co. v. Hamideh,* 311 Ill.App.3d 127, 724 N.E.2d 32 (Ill.App. Ct.1999) (lottery winner's pledge of future lottery installment payments as collateral for loan was impermissible under state lottery law and was thus invalid); *In re Meyers,* 139 B.R. 858, 862 (Bankr. N.D.Ohio 1992) (assignment void given that under Ohio law, assignment of lottery prize not permitted absent court order).

### Illegal Contract

Western argues in its post-trial brief that even if the transaction is illegal, it is nonetheless still enforceable under Massachusetts law, citing *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers,* 411 Mass. 39, 577 N.E.2d 283 (Mass. 1991). *Massachusetts Mun. Wholesale* points out that a court has discretion to determine that an illegal contract is void ab initio, but that such a determination must be linked to considerations of "fairness and public policy." *Id.* 577 N.E.2d at 293.

The Massachusetts Court of Appeals has noted that the legislative purpose of the anti-assignment provision of § 28 is to prohibit a secondary market in lottery prizes. In *Welford v. Nobrega,* 30 Mass.App.Ct. 92, 102–103 n. 10, 565 N.E.2d 1239, 1245 (Mass.App.Ct.1991), *aff'd,* 411 Mass. 798, 586 N.E.2d 970 (1992). As noted in *Welford:*

> The prohibition against unpermitted assignments was, no doubt, intended to prevent the creation of a secondary, unregulated market in winning tickets, a legitimate legislative goal.

The assignment of the lottery prize here thus directly contravenes the judicially recognized legislative goal of the anti-assignment law in Massachusetts. Accordingly, the assignment is void and unenforceable as contrary to the language and purpose of § 28, chapter 10 of the Massachusetts state lottery law.

Western United argues that the contract should be enforced, even if illegal, because Koonce was a "voluntary part[y] to the alleged illegality" and should not enjoy an "unjust windfall." Western cites *Town Planning and Eng'g Assoc., Inc. v. Amesbury Specialty Co., Inc.,* 369 Mass. 737, 342 N.E.2d 706 (Mass.1976) in support of its argument that the transaction is enforceable even if it is illegal.

*Amesbury,* however, is distinguishable as it concerned the violation of a statute in the *performance* of a contract. The case before this Court, however, concerns in-

stead whether the *contractual provision itself is illegal* and not whether the *performance* of the contract violates a statute. Notwithstanding that, however, the factors cited in *Amesbury* militate toward the conclusion that the assignment is void.

*Amesbury* cites a number of factors to be considered in determining whether a party to an illegal contract can recover under the contract, including: the nature of the subject matter of the contract; the extent of the illegal behavior; was that behavior a material or only incidental part of the performance of the contract; what was the strength of the public policy underlying the prohibition; how far would effectuation of the policy be defeated by denial of an added sanction; how serious or deserved would be the forfeiture suffered by the plaintiff; how gross or undeserved the defendant's windfall.

Here, the "illegal behavior" was an assignment of a lottery prize in direct violation of an emphatic prohibition under Massachusetts law. The assignment was material to the Loan Agreement. To permit the assignment would directly defeat the judicially recognized legislative policy of preventing a "secondary, unregulated market" in winning lottery tickets as stated by the Massachusetts Court of Appeals in *Welford v. Nobrega*, 30 Mass.App.Ct. 92, 102–103 n. 10, 565 N.E.2d 1239, 1245 (Mass.App.Ct.1991), *aff'd*, 411 Mass. 798, 586 N.E.2d 970 (1992). Given that it was Woodbridge Financial who solicited the assignment by advertising in the U.S.A. Today newspaper and drafted the documents which circumvented the anti-assignment statute, voidance of the assignment does not amount to a gross or undeserved windfall for the Koonces or the bankruptcy estate.

*Estoppel*

■ Western contends that the Koonces benefitted from the transaction and thus should not be relieved of its obligations. Under Massachusetts law, however, "estoppel cannot rest on an illegal contract." *Beacon Hill Civic Assoc. v. Ristorante Toscano, Inc.*, 422 Mass. 318, 324, 662 N.E.2d 1015, 1019 (Mass.1996), citing *New York, N.H. & H.R.R. Co., v. York & Whitney Co.*, 215 Mass. 36, 102 N.E. 366 (Mass.1913). This should be especially true given the judicially recognized legislative goal to prohibit a secondary market in lottery prize winnings.

*Letter From Lottery Commission*

Western United argues that the Massachusetts Lottery Commission, by its Approval Letter From Lottery Commission, "expressly approved the Koonce Trust, thereby implicitly determining that the Trust comported with the statute."

■ While a legislative rule (i.e., a regulation promulgated by an agency under legislative power) is as binding upon a court as a statute, an interpretative rule is not binding. *Niles v. Boston Rent Control Adm'r*, 6 Mass.App.Ct. 135, 149, 374 N.E.2d 296, 304 (Mass.App.Ct.1978); 1 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 233–234 (1994).

■ In this case, the Approval Letter From Lottery Commission was an advisory opinion, that is, the Commission's interpretation of a statute/rule. Thus, it is not binding.

Moreover, the Approval Letter From Lottery Commission indicates that the Commission had only the assignment and the trust documents before it when considering its approval. Unless the Lottery Commission was provided with a copy of the Loan Agreement and the Secured Promissory Note, it would have had no idea that the intended beneficiary of the Koonce Trust was neither Koonce nor a

family member as permitted by state law, but a third party.

### Unreported Massachusetts Case

Western United urges the Court not to rely on *Woodbridge Sterling Capital, LLC v. Massachusetts State Lottery Commission,* as it is an unreported decision and was issued after the loan.

While this Court agrees with both the holding and the reasoning in *Woodbridge Sterling Capital, LLC,* the Court does not consider the case to be precedential authority and thus has not relied on it as such.

### Holder in Due Course

Western United argues that it is a holder in due course, stating that it took the assignment for value ($8,454) and that there is no evidence of bad faith or notice of any defense, pointing out that the Massachusetts Lottery approved the assignment.

While Western United may be entitled to payment, its status as a holder in due course is not relevant given the Court's ruling that the assignment is void and thus the Loan Agreement is not secured.

### Post–Petition Transfer

■■ 11 U.S.C. § 549(a) provides that a trustee may avoid an unauthorized transfer of property of the estate which occurs after the commencement of the case. To avoid a transfer under § 549(a), the trustee must show that after commencement of the case, property of the estate was transferred and the transfer was not authorized by the bankruptcy court or the Code. *In re Mora* 218 B.R. 71, 73 (9th Cir. BAP 1998), *aff'd,* 199 F.3d 1024 (9th Cir.1999).

■ Section 550 of the Code further provides that, to the extent a transfer is avoided under § 549, the trustee may recover for the benefit of the estate the property transferred or the value of such property from the initial transferee or the entity for whose benefit such transfer was made, or any immediate or mediate transferee of the initial transferee. Section 542 of the Code compels parties in possession of nonexempt property of the estate to turn over such property to the trustee.

■ Here, the stipulated facts are that after the petition was filed in September, 1997, Western United and First Financial received checks in January, 1998, and January, 1999. In January, 1998, the check Western United received was for $30,662; First Financial received $1,000 as a fee. In January, 1999, again, Western United received a check in the amount of $30,662; First Financial received $1,000 as a fee. An additional check in the amount of $43,802 now rests in the Court Registry, awaiting further order of the Court.

These post-petition transfers were not authorized by the bankruptcy court or by a provision of the Bankruptcy Code. Accordingly, these sums are recoverable for the benefit of the estate under § 550, and shall be turned over to the Chapter 13 Trustee pursuant to § 542.

■ 11 U.S.C. § 550(b) provides a good faith transferee for value defense. The burden of proving the defense, however, is upon the transferee and successor transferees. *In re Agric. Research and Tech. Group,* 916 F.2d 528, 535 (9th Cir. 1990). Western United has failed to present any evidence that it qualifies for this defense.

### Plaintiffs' Other Claims For Relief Are Denied

#### Fraudulent Transfer

■ The Plaintiffs have failed to prove the elements of a fraudulent transfer under 11 U.S.C. § 548. For example, the Plaintiffs have failed to show the requisite

elements of intent or that the Koonces received less than a reasonably equivalent value in exchange for the obligation or transfer. *See In re Image,* 139 F.3d 574, 576 (7th Cir.1998) (whether reasonably equivalent value was received in allegedly fraudulent transaction is a question of fact).

### Conspiracy

■■■ In addition, Plaintiffs have failed to sustain their burden of proving a civil conspiracy. Under Nevada law, an actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts. *Dow Chem. Co. v. Mahlum,* 114 Nev. 1468, 1488–89, 970 P.2d 98, 112 (Nev.1998). To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit. *Id.* Here, the Plaintiffs have failed to sustain their burden of proving the elements of a conspiracy. They have failed, for example, to present any evidence of an agreement, or an intent to accomplish an unlawful objective for the purpose of harming another.

### Equitable Subordination

■■■ Three findings are required before equitable subordination will be granted: (1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code. *In re Lazar,* 83 F.3d 306, 309 (9th Cir.1996).

■■■ Here, the Plaintiffs failed to introduce any evidence at trial that the unlawful assignment either injured other creditors or conferred an unfair advantage on the Defendants. "[E]quitable subordina-tion is an unusual remedy which should be applied only in limited circumstances." *Id.*

### Attorneys' Fees

■■■ Under the "contractual exception" to the American Rule, attorneys' fees may be awarded where a contract provides for them. Such an award is governed by state law. *In re Fobian,* 951 F.2d 1149, 1153 (9th Cir.1991). However, where litigated issues involve not contract enforcement but issues peculiar to federal bankruptcy law, attorneys' fees will not be awarded absent bad faith or harassment by the losing party. *Id.*

Should the Plaintiffs want to pursue an award of attorneys' fees, they must file a brief within ten days after the entry of the Judgment. The Defendants shall have ten days to file a response.

### Punitive Damages

The Joint Pre–Trial Order contains no reference to this issue and is thus deemed abandoned. In any case, Plaintiffs have failed to establish a claim for punitive damages.

### Interest

■■■ In actions to recover unauthorized post-petition transfers, parties are entitled to pre-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), from the earlier of the initial demand for turnover or from the date the complaint was filed. *In re Masters,* 137 B.R. 254 (Bankr.S.D.Ohio 1992). Here, the Plaintiffs have not shown the date of a demand for turnover, if any. Accordingly, pre-judgment interest is allowed in accordance with 28 U.S.C. § 1961(a), from the date the adversary proceeding was commenced.

Post-judgment interest shall accrue on the total judgment after entry of the judgment at the rate provided by federal law. *See* 28 U.S.C. § 1961.

*Conclusion*

For the reasons stated above, this Court concludes that the Massachusetts lottery prize payments are property of the estate. The amount currently held in the Court Registry as well as any future lottery proceeds shall be property of the estate and are to be administered by the Chapter 13 Trustee as such.

Furthermore, the Plaintiffs are entitled to judgment against Western United in the amount of the proceeds received post-petition: $61,324 plus pre-judgment and post-judgment interest.

Plaintiffs are also entitled to judgment against First Financial in the amount of the proceeds received post-petition: $2,000 plus pre-judgment and post-judgment interest.

The lottery payments to be paid in the future shall be paid to the Chapter 13 Trustee and are hereby free of any liens as to the Defendants, who hereby have the status of unsecured creditors.

To the extent that the foregoing conclusions of law should be considered to be findings of fact, they should be construed as such. Pursuant to Fed.R.Bankr.P. 9021, the Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law after the time permitted for briefing on the attorneys' fees issue.

**IT IS SO ORDERED.**